FULMORE v. LANE, Comptroller.

(Supreme Court of Texas. Nov. 22, 1911.)

STATUTES (§ 32*)—VETO MESSAGE—CONSTRUCTION.

Where a Governor's veto message is expressed in plain language, its meaning and effect must be determined by a construction of the language used.

[Ed. Note.—For other cases, see Statutes, Dec. Dig. § 32.*]

On rehearing. Petition overruled.

For former opinion, see 140 S. W. 405.

BROWN, C. J. I wrote the opinion heretofore filed by me in haste and with the view of expressing my concurrence with my Associates. That opinion does not state clearly the reasons which influenced me in arriving at my conclusions as to the law of this case. With the consent of my Associ-

ates, I withdraw that opinion and will give my reasons in the disposition of this motion.

We agree that the question whether the excess, if any, of the appropriation for 1911–1912 will be available in the succeeding year is not properly before this court. That question has not been decided, and no intimation to that effect was intended to be expressed in the former opinions. It is not the province of this court to decide upon rights which have not been presented to us, or upon questions which would in no way contribute to the proper determination of the issues presented here.

We all agree that the sum of $83,160, specified in the paragraph of the appropriation bill which related to the Attorney General's department, constituted an item which the Governor had authority to veto.

Judge RAMSEY is of opinion that the Governor did not intend to veto that item, which conclusion he supports with forcible arguments expressed in his opinion. Judge DIBRELL and I are of opinion that the Governor intended to veto the item $83,160, and that his veto did have that effect.

I will here set out the parts of the bill which are pertinent to the question to be decided:

"Be it enacted by the Legislature of the state of Texas:

"Section 1. That the following sums of money, or so much thereof as may be necessary, be and the same are hereby appropriated out of any moneys in the state treasury not otherwise appropriated for the support of the state government from September 1st, 1911, to August 31st, 1913.

"Attorney General's Department.

For the Years Ending—
Aug. 31, 1912—Aug. 31, 1913.

For the support and maintenance of the Attorney General's department, * * * there is hereby appropriated eighty-three thousand and one hundred and sixty ($83,160.00) dollars, to be expended during the two fiscal years ending August 31, 1912, and August 31, 1913, to be paid by the Treasurer on warrants drawn by the Comptroller upon vouchers approved by the Attorney General...$41,580.00  $41,580.00."

I omit the different items for which the sums might be expended as specified in the bill.

The Governor filed his objections to this portion of the appropriation bill, in these words: "The sum of eighty-three thousand and one hundred and sixty $83,160.00) dollars is objected to and disapproved: First, because it is an excessive appropriation of the public funds for the purposes appropriated at a time when the burden of taxation upon the people of this state must necessarily be increased to supply deficits and pay the necessary expenses of government; sec-

ond, because the same is an invasion of the Constitution, in that it is an attempt to make an appropriation in gross, and not for specific purposes, as directed by the Constitution."

Indisputably this clear and explicit language had the effect to annul the item mentioned, unless we are permitted to look to other language and circumstances to explain those terms. There is no ambiguity in the language, nor is there any room for construction. We must get the intention of the Governor from that language, unless there be other language in the veto message which would authorize a conclusion that the Governor did not intend to veto that item.

It is urged with much force by the counsel for relator that the Governor did not intend to destroy the entire appropriation, but undertook to preserve one-half of it to be used, which he could not do; therefore his veto of the aggregate sum was not effective. The argument is that the Governor, having attempted to do that for which he had no authority, nullified the veto for which he had authority. Nothing that the Governor wrote into his veto message, as to the effect of his action, can have any influence on the construction of the veto itself, unless it shows that his intention was not to veto the aggregate sum, and there is not a word which will justify such an inference.

The veto message being expressed in plain language, we must derive the meaning and effect of the veto from the language used by the Governor. Dodson v. Bunton, 81 Tex. 658, 17 S. W. 508. In that case this court said: "But appellee argues that, if not within the letter of the statute, the case falls with its spirit. When the purpose of a legislative enactment is obvious from the language of the law itself, there is nothing left to construction. In such case it is vain to ask the courts to attempt to liberate an invisible spirit, supposed to lie concealed within the body of the law, and thus interpret away the manifest legislative intention by embracing subjects not fairly within the scope of the statute. The courts must enforce the laws as the Legislature has made them, and if the state of the case here presented requires regulating relief must be had in the legislative department."

We might add many cases from the decisions of this court, as well as other authorities, but they are not needed. Judge DIBRELL and I agree that the veto did annul the sum of $83,160 named as the appropriation for two years.

What effect did that veto have upon the sums specified in each column for the fiscal year 1911–1912 and the year 1912–1913? They were parts of the aggregate item of $83,160, and in our opinion fell by the veto of the main sum, so far as they depended upon the appropriation made in that paragraph. If the result should be that the Attorney General's department would be with-

out funds, that would be disastrous to the state, which fact appeals to the court to look to the entire bill to find support for the appropriation. But this court cannot legislate, even to meet such conditions. We must find it in the language of the law. When the appropriation made by the language used in that particular paragraph was annulled, the paragraph was put upon the same basis as the paragraphs which made appropriations for other departments. Neither had any adequate language to appropriate the sums named, except by reference to section 1 of the bill, and each must be read in connection with that section, to give effect to appropriations made therein for each department. Therefore, after eliminating the sum of $83,-160, the appropriation for the Attorney General's department was dependent upon section 1 for its support. Writing that section and paragraph together, as they must be construed, we have appropriate language to make appropriation of the sums named, which applies to every paragraph of the bill, and each must be read in the connection shown above in order to give it any effect. This bill definitely appropriates for the support of the Attorney General's department the sum of $41,580 for each fiscal year, just as it makes appropriation for each department. All appropriations depend upon the same language, and we are of opinion that the effect of the law was to create two items, of $41,580 each, and that the Governor had authority to veto either of them.

It is ordered that the motion be overruled.

RAMSEY, J. I concur in the action of the court in overruling the motion for rehearing. I also fully concur that, in view of the opinion of the majority of the court, the question as to whether the appropriation for the first year may be used or become available for the second year is not before the court, and that a decision of that question is not called for, and, holding their views, ought not now to be decided.

However, it should in fairness be stated, and my Associates authorize me to say that in this they fully concur, that with my views, and based as it is on the reasoning which led me to the conclusion to which I arrived, it was in no sense improper, but authorized, for me to express the opinion that no part of the appropriation for the year ending August 31, 1912, can be used for the year ending August 31, 1913. It is too manifest to my mind that the provisions on page 62 of the Acts of the Special Session of 1911, to this effect: "Provided, that any portion of the appropriations made herein for the year ending August 31, 1911, for maintenance and support, the erection, remodeling or equipment, for repairs of buildings or for any institution of this state for which appropriations have been made herein which remain unexpended at the end of said fiscal year, shall be available, and may

be used for the year ending August 31, 1913" —so far from authorizing such use, by necessary implication forbid it. Such a provision first appeared in our laws in 1909, and was intended, as the language expressly says, to be limited to appropriations for constructions of buildings and the support of certain institutions. The bill itself speaks of institutions, and the meaning of the word is well understood. The bill itself refers to and names the Attorney General's department as a department. It scarcely needs to be stated that, if it had been intended to make this provision apply generally, it could and would have been done in one line and in respect to *all* appropriations. The inclusion of these special matters, buildings, and institutions is to my mind convincing evidence that this provision was not to apply to any other appropriation.

As to the other questions it seems unnecessary for me to say more.