**JESSEN ASSOCIATES, INC., Relator,**

v.

**Bob BULLOCK, Comptroller of Public Accounts, Respondent.**

**No. B–5577.**

Supreme Court of Texas.

Dec. 17, 1975.

Rehearing Denied Jan. 21, 1976.

**596**

Baker & Botts, Thomas M. Phillips, Stan McLelland and Robert P. Wright, Houston, for relator.

1. This rider, set out in part on page 2 of this opinion, is found in Text of Conference Committee Reports, S.B. 52, art. IV, at IV–29. The text of the General Appropriations Act, Acts 64th Leg., R.S.1975, ch. 743, p. 2416, has not yet been printed in Vernon's Texas Session Law Service, Laws 1975, 64th Legislature. The text of that Act has been published in "Text of Conference Committee Report, S.B. 52 and Governor's Veto

John L. Hill, Atty. Gen., C. Robert Heath, Asst. Atty. Gen., Austin, for respondent.

GREENHILL, Justice.

This suit is an original petition for writ of mandamus to compel the Respondent Bob Bullock, Comptroller of Public Accounts, to issue a warrant on the State Treasury for $2,590.25 for architectural services performed by Relator, Jessen Associates, Inc., for The University of Texas at Austin.

It is our conclusion that the warrant should be issued. In reaching this conclusion, we hold that a rider to the latest General Appropriations Act[1] was not subject to the veto of the Governor. The Governor has the power to veto an entire appropriations bill; but his power to veto part of an appropriations bill is limited to vetoing "items of appropriation." This rider, authorizing the construction of certain enumerated projects without the consent of the College Coordinating Board, was not intended by the Legislature to appropriate funds, and therefore was not an "item of appropriation" which was subject to veto apart from the remainder of the bill. We also hold that the rider did not violate the constitutional requirement that bills contain no more than one subject, since the rider related to, and was germane to, the subject of the General Appropriations Act. The reasons for these holdings are discussed more fully below.

The basis for this controversy originates in Senate Bill 706 enacted by the last Legislature.[2] Section 3 of that bill amends Section 61.058 of the Texas Education Code to read in part as follows:

Proclamation," Supplement to Senate Journal, Sixty-fourth Legislature, Regular Session, June 2, 1975. Therefore, citations in this opinion to portions of the General Appropriations Act refer to the latter publication. All emphasis herein is added by the Court.

2. Acts 64th Leg., R.S.1975, ch. 676, p. 2055.

"To assure efficient use of construction funds and the orderly development of physical plants to accommodate projected college student enrollments, the board [the Coordinating Board, Texas College and University System] shall:

. . . . .

"(8) approve or disapprove all new construction and repair and rehabilitation of all buildings and facilities at institutions of higher education financed from any source other than ad valorem tax receipts of the public junior colleges, *provided that* :

. . . . .

(D) the requirement of approval or disapproval by the board *does not apply* to any new construction or major repair and rehabilitation project that is *specifically approved by the legislature.*"

Several days after the passage of Senate Bill 706, the Legislature approved the General Appropriations Act for the 1975–1977 biennium. In that Act, following the schedule of appropriations for The University of Texas at Austin, there appears a rider which contains three sections. The rider reads:

"The Board of Regents of The University of Texas System *is hereby authorized* (1) to expend such amounts of its Permanent University Fund bond proceeds and/or other bond proceeds and such amounts of its other available moneys as may be necessary to fund one or more of the following projects either in whole or in part, (2) to accept gifts, grants, and matching grants to fund any one or more of such projects either in whole or in part, and (3) to acquire, construct, alter, add to, repair, rehabilitate, equip and/or furnish any one or more of such projects for The University of Texas at Austin:

(1) Alterations and Additions to Law School . . ." [3]

Other projects not relevant here are also listed.

It is the position of Jessen Associates (hereinafter referred to as Jessen) that the specific legislative approval required in the College Coordinating Board statute set out above was given, in as much as the rider states that "The Board of Regents . . is hereby authorized." As indicated, we agree that it did constitute such approval.

By proclamation dated June 22, 1975, the Governor attempted to veto this rider to the General Appropriations Act.

Notwithstanding the Governor's action, the Board of Regents of The University of Texas System approved a project for the construction of alterations and additions to The University of Texas School of Law, and entered into a written contract with Jessen. Jessen made certain preliminary studies and cost estimates with regard to the construction project, and submitted its claim for payment in the amount of $2,590.25. This amount was approved by the Board of Regents, and a voucher was issued directing the Comptroller of Public Accounts to issue a warrant in payment of the claim.

The voucher was submitted to Respondent Bullock, who declined to issue the warrant. In a letter to Jessen and the Chairman of the Board of Regents, Bullock gave the following reasons for his action: (1) the proposed construction project had not been approved by the Coordinating Board, as required by Article 61.058(8) of the Texas Education Code; (2) the Governor had vetoed the provision in the General Appropriations Act by which the Legislature had sought to give its approval to the project; (3) that provision is void because it constitutes "general legislation" in violation of Section 35, Article III, of the Texas Constitution; [4] and (4) the vetoed provision did

3. Text of Conference Committee Report, S.B. 52, art. IV, at IV–29.
4. That provision reads as follows:
 Sec. 35. No bill, (except general appropriation bills, which may embrace the various subjects and accounts, for and on account of which moneys are appropriated) shall contain more than one subject, which shall be expressed in its title. But if any subject

not constitute "specific approval by the legislature" as required under Section 61.-058(8)(D) of the Texas Education Code.

The constitutional provisions dealing with the Governor's power to veto legislation are found in Article IV, Section 14 of the Texas Constitution:

"Sec. 14. Every bill which shall have passed both houses of the Legislature shall be presented to the Governor for his approval. If he approve he shall sign it; but if he disapprove it, he shall return it, with his objections . . . . *If any bill presented to the Governor contains several items of appropriation he may object to one or more of such items, and approve the other portion of the bill.* In such case he shall append to the bill, at the time of signing it, a statement of the items to which he objects, and no item so objected to shall take effect."

 This language is the sole source of the Governor's authority to veto legislation. His veto power is a legislative function and not an executive function, and it exists only to the extent granted by the Constitution. To the extent that the Governor's actions exceed this authority, they have no effect. *Fulmore v. Lane,* 104 Tex. 499, 140 S.W. 405 (1911). Therefore the first question for our consideration is whether the Governor's attempted veto was permitted under the constitutional language set out above.

 The case of *Fulmore v. Lane,* supra, is a leading Texas authority on the veto power of the Governor. That case, like this one, involved an attempt to veto a portion of a General Appropriations Act. In the opinion by Justice Dibrell,[5] there appears the following discussion:

The executive veto power is to be found alone in section 14, art. 4, of the Constitution of this state. By that section he is authorized to disapprove any bill in whole, or, if a bill contains several items of appropriation, he is authorized to object to one or more of such items. Nowhere in the Constitution is the authority given the Governor to approve in part and disapprove in part a bill. The only additional authority to disapproving a bill in whole is that given to object to an item or items, where a bill contains several items of appropriation. It follows conclusively that where the veto power is attempted to be exercised to object to *a paragraph or portion of a bill other than an item or items,* or to *language qualifying an appropriation or directing the method of its uses,* he exceeds the constitutional authority vested in him, and his objection to such paragraph, or portion of a bill, or language qualifying an appropriation, or directing the method of its use, becomes noneffective. 140 S.W. at 412.

Consequently, if the provision which the Governor attempted to veto in the present case is not *an item of appropriation,* but is merely language qualifying an appropriation, or directing its uses, then the veto is of no effect. See also Texas Attorney General Opinion No. V–1196(1951).[6]

There is no Texas authority other than the *Fulmore* case which deals with the question of what is meant by "item of ap-

---

shall be embraced in an act, which shall not be expressed in the title, such act shall be void only as to so much thereof, as shall not be so expressed.

5. All three members of the Court wrote separate opinions in that case. Although all reached the same result, Justice Ramsey dissented in part. On motion for rehearing, Chief Justice Brown and Justice Ramsey authored additional writings. 104 Tex. 499, 140 S.W. 1082.

6. Opinions of Attorney Generals, while not binding on the judiciary, are persuasive and are entitled to consideration. *Jones v. Williams,* 121 Tex. 94, 45 S.W.2d 130 (1930); *City of Houston v. Southern Pacific Transportation Company,* 504 S.W.2d 554 (Tex. Civ.App.—Houston [14th] 1973, writ ref'd n. r. e.); *Bass v. Aransas County Independent School District,* 389 S.W.2d 165 (Tex.Civ. App.—Corpus Christi 1965, writ ref'd n. r. e.).

propriation." [7] However, that term has been discussed by courts in other jurisdictions with similar constitutional provisions. In *Bengzon v. Secretary of Justice*, 299 U.S. 410, 57 S.Ct. 252, 81 L.Ed. 312 (1936), the Supreme Court of the United States held that such term "obviously means an item which in itself is a specific appropriation of money . . . ." The Supreme Court of Florida, in *Green v. Rawls*, 122 So.2d 10 (Fla.1960), made its determination based on the presence of two factors. Where a certain provision designates a specified purpose and the amount to be used therefor, it is an item of appropriation even though it may be included in a larger, more general item. In *Commonwealth v. Dodson*, 176 Va. 281, 11 S.E.2d 120 (1940), the following definition is given:

> An item in an appropriation bill is an indivisible sum of money dedicated to a stated purpose. It is something different from a provision or condition, and where conditions are attached, they must be observed; where none are attached, none may be added.

■ It can be said then that the term "item of appropriation" contemplates the setting aside or dedicating of funds for a specified purpose. This is to be distinguished from language which qualifies or directs the use of appropriated funds or which is merely incidental to an appropriation. Language of the latter sort is clearly not subject to veto. *Fulmore v. Lane*, supra; *Bengzon v. Secretary of Justice*, supra; *Fairfield v. Foster*, 25 Ariz. 146, 214 P. 319 (1923); *Turner v. Iowa State Highway Comm'n*, 186 N.W.2d 141 (Iowa 1971); *State v. Holder*, 76 Miss. 48, 23 So. 643 (1898); *Commonwealth v. Dodson*, supra;

Texas Attorney General Opinion Nos. M–1199 (1972), V–1196 (1951).

■ It is clear that subdivisions (2) and (3) of the rider here in question do not set aside funds. They only authorize the Board of Regents to accept gifts and grants and to acquire and construct the enumerated projects. Therefore, if the rider contains any language of appropriation, it must be found in subdivision (1), which authorizes the Regents "to expend such amounts of its Permanent University Fund bond proceeds and/or other bond proceeds and such amounts of its other available moneys as may be necessary." Although this is not the traditional language of appropriation, it might be construed as setting aside funds under certain circumstances.

■ A fundamental rule in the construction of statutes is to ascertain and give effect to the intent of the Legislature. *Calvert v. Texas Pipe Line Co.*, 517 S.W.2d 777 (Tex.1974); *Flowers v. Dempsey-Tegeler & Co.*, 472 S.W.2d 112 (Tex.1971). This rule applies also in determining what constitutes an item of appropriation. See *Fulmore v. Lane*, supra. If the language is intended to set aside funds for a specified purpose, it is an "item of appropriation" and is therefore subject to veto by the Governor. Otherwise, the Governor must veto the entire bill or let the objectionable part stand.

Of special significance in determining the legislative intent in this case is the fact that the funds mentioned in subdivision (1) of the rider are appropriated elsewhere in the General Appropriations Act. By its terms, the rider involves only bond proceeds and other available moneys.[8] Clearly such lan-

---

7. The case of *National Biscuit Co. v. State*, 134 Tex. 293, 135 S.W.2d 687 (1940), is relied on by Respondent in this regard. However that case did not involve the veto power of the Governor. Instead, an attempted appropriation was attacked as being in violation of Section 6, Article VIII of the Constitution, which requires appropriations to be specific. The opinion in that case assumes that an appropriation was made, and deals solely with the problem of

specificity. It sheds no light on what is meant by "item of appropriation."

8. Relator's brief sets out six areas in the General Appropriations Act which make funds available for use under the terms of the rider. These areas include (1) Section 18, Article IV, at IV–93, which appropriates the revenues from the constitutional building funds; (2) Section 18, Article V, at V–44, which appropriates all bequests and gifts of

guage cannot be construed as making an independent appropriation, but refers only to funds which have otherwise been made available.

■ The mere fact that the funds have been appropriated elsewhere does not preclude the construction that a provision is an item of appropriation, but it may raise questions as to what the Legislature intended. It is generally presumed that every word in a statute is used for a purpose. *Perkins v. State*, 367 S.W.2d 140 (Tex.1963); *Eddins-Walcher Butane Co. v. Calvert*, 156 Tex. 587, 298 S.W.2d 93 (1957). In light of this rule of construction, should we conclude that this rider was intended merely to reappropriate funds appropriated elsewhere? If no other purpose was evident, such a conclusion might be required. However, an examination of the laws bearing on the same subject reveal a different intent,[9] and that intent should be given effect.

■ When the rider is read in connection with the requirements of Section 61.-058, Texas Education Code, its purpose becomes clear. What the Legislature intended was to give its approval to the enumerated projects, and thereby eliminate the need for approval by the Coordinating Board. There was no intent for the language of the rider to set aside funds for these projects, because such funds were appropriated elsewhere. The rider was intended merely to direct the use of those funds by giving express legislative approval to the projects specified.

■ Consequently, the rider cannot be construed as an "item of appropriation" as that term is used in the Constitution. The Governor, therefore, exceeded the power granted to him in the Constitution in attempting to veto the rider; and his actions therefore have no effect.

■ The Comptroller argues that if the rider is not an item of appropriation (which we have held it is not), then it is "general legislation" and therefore violates Article III, Section 35 of the Texas Constitution. The relevant portions of that section read as follows:

No bill, (*except general appropriations bills*, which may embrace the various subjects and accounts, for and on account of which moneys are appropriated) shall contain more than one subject, which shall be expressed in its title.

Despite the apparent exception for general appropriations bills, it has been held that they too must be limited to a single subject, which is the appropriation of funds to be paid from the State Treasury. *Moore v. Sheppard*, 144 Tex. 537, 192 S.W.2d 599 (1946); *Linden v. Finley,* 92 Tex. 451, 49 S.W. 578 (1899). See also Texas Attorney General Opinion No. V–1254 (1951).

■ In determining whether a bill includes more than one subject, both the constitutional provision and the statute under consideration are to be liberally construed in favor of constitutionality. *Robinson v. Hill*, 507 S.W.2d 521 (Tex.1974); *Central Education Agency v. Independent School District of City of El Paso*, 152 Tex. 56, 254

money to State agencies; (3) Section 19, Article V, at V–44, which appropriates all federal funds received by State agencies; (4) language at IV–25 which appropriates the residue of the Available Fund allocable to the University of Texas System; (5) certain portions of the appropriations to the University of Texas at Austin, at IV–28–29, which may be used to fund certain aspects of construction projects; and (6) those funds appropriated to the University of Texas at Austin, at IV–28–29, which may be transferred from their designated use and used to fund construction projects. This list is intended only to show some possible sources of funds available for use under the terms of the rider. It should not be construed as a holding by this Court that such funds are in fact available for the construction projects, or that such funds are the only funds available. Those questions are not presented in this case.

9. In ascertaining the intent of the Legislature, all laws bearing on the same subject are to be considered and given effect. *Duval Corporation v. Sadler*, 407 S.W.2d 493 (Tex.1966); *Wintermann v. McDonald*, 129 Tex. 275, 102 S.W.2d 167 (1937).

S.W.2d 357 (1953). The statute will be upheld where its provisions relate, directly or indirectly, to the same general subject, and have a mutual connection. See *Robinson v. Hill,* supra, and cases cited therein. Or, stated differently, the provision is valid where it is germane to the subject of the bill. *Moore v. Sheppard,* supra; *Linden v. Finley,* supra; *Missouri-K. T. R. Co. v. Rockwall County Levee Improvement District No. 3,* 117 Tex. 34, 297 S.W. 206 (1927).

■ However the test is stated, subdivision (1) of the rider is clearly not invalid. In authorizing the expenditure of funds, it relates to the appropriation of funds. Likewise, it is germane to that subject. This subdivision merely directs the expenditure of appropriated funds, and is therefore permissible under Article III, Section 35, of the Constitution. *Conley v. Daughters of the Republic,* 106 Tex. 80, 156 S.W. 197 (1913).

■ On the other hand, the necessary relationship between subdivisions (2) and (3) and the subject of the General Appropriations Act is not so evident. Read apart from subdivision (1), these subdivisions might embrace subjects impermissible in a general appropriations bill. This is especially true of subdivision (3). However, statutory provisions are not to be isolated from the surrounding language and construed apart from their context. *Calvert v. Texas Pipe Line Co.,* 517 S.W.2d 777 (1974); *Short v. W. T. Carter & Brother,* 133 Tex. 202, 126 S.W.2d 953 (1939). When read as a whole, as relevant here, the rest of the rider does no more than subdivision (1). It merely directs the use of appropriated funds by expressly approving their expenditure on certain construction projects. Therefore, the rider does not violate the provisions of Article III, Section 35, of the Constitution.

In his letter setting forth the reasons for refusing to issue the warrant, Bullock states that the rider did not constitute "specific approval of the Legislature" as required under Section 61.058(8)(D) of the Texas Education Code. We cannot agree with this contention. As discussed above, approval under this section of the Education Code was the manifest purpose of the rider. In addition, a review of legislative practice under a similar provision shows clearly that "prior approval of the Legislature" has been given by rider to the General Appropriations Act similar in form to the one in question.

■ In 1958, Article VII, Section 18, of the State Constitution was amended by adding the following limitation to the authority of the Board of Regents to issue negotiable bonds and notes for the purpose of constructing, equipping or acquiring permanent improvements:

> ". . . provided, however, no building or other permanent improvement shall be acquired or constructed hereunder for use by any institution of The University of Texas System, except at . . . The Main University and Texas Western College, *without the prior approval of the Legislature* or of such agency as may be authorized by the Legislature to grant such approval."

The very next General Appropriations Act passed after the effective date of this amendment contained a rider authorizing certain construction projects at The University of Texas Medical Branch at Galveston. Acts 56th Leg., 3rd C.S. 1959, ch. 73, art. IV, pp. 676–77. As in this case, the rider authorized the Board of Regents to construct certain projects and to accept gifts and grants for other projects. Riders containing similar language have been included in each of the succeeding ten General Appropriations Acts.[10]

In reliance on these riders, the Board of Regents has undertaken numerous construction projects and has caused vast sums of money to be expended. It must be presumed that the Legislature, in permitting this practice to continue, has approved the

---

10. E. g., Acts 57th Leg., 1st C.S. 1961, ch. 62, art. IV, pp. 404–7; Acts 63rd Leg., R.S. 1973, ch. 659, art. IV, pp. 2098, 2100–2101, 2103, 2104.

construction placed on these riders by the Board of Regents. Consequently, by enacting the provisions of Senate Bill 706 in substantially the same form as the 1958 constitutional amendment, the Legislature must have contemplated that a similar construction would be given, and that riders to the General Appropriations Acts would constitute the requisite "legislative approval." *Federal Crude Oil Co. v. Yount-Lee Oil Co.,* 122 Tex. 21, 52 S.W.2d 56 (1932); *Oden v. Gates,* 119 Tex. 76, 24 S.W.2d 381 (1930).

Further evidence that the rider was intended to give legislative approval to the enumerated projects is evident from an examination of a proposed rider to Article IV of the General Appropriations Act. Contained in Senate Concurrent Resolution 109, the proposed rider read as follows:

"Notwithstanding the specific listing of approval of facilities construction projects following appropriations to various component units of The University of Texas System, The Texas A&M University System, East Texas State University, University of Houston, Sam Houston State University, and Stephen F. Austin State University, such listing shall *not* constitute approval by the Legislature as contemplated by Senate Bill 706, Sixty-fourth Legislature." S.C.R. 109, 64th Legislature (1975), ch. IV, § 34, at 86.

This amendment was rejected by the Conference Committee considering the General Appropriations Bill, and was therefore not a part of the final version of that bill. That this amendment was proposed at all and rejected is an indication that the rider under consideration was viewed as legislative approval under the terms of Senate Bill 706.

When the General Appropriations Act was enrolled and filed with the Secretary of State, it contained the language of the proposed amendment set out above. However, that language was marked through by a wavy line of blue ink. It is the Comptroller's position that this fact raises questions as to the effect to be given the marked-through language, and that his duty is not clear and free from doubt. He therefore contends that the remedy of mandamus ought not to lie.

Generally speaking, mandamus will lie only where the duty to act is clear and there is no disputed question of fact. *Cobra Oil & Gas Corporation v. Sadler,* 447 S.W.2d 887 (Tex.1970); *Williams v. Pitts,* 151 Tex. 408, 251 S.W.2d 148 (1952); *Wortham v. Walker,* 133 Tex. 255, 128 S.W.2d 1138 (1939). These requirements were satisfied here by the affidavit of Thomas M. Keel, the Director of the Legislative Budget Board. Mr. Keel's affidavit, which is not disputed, explained that the rejected amendment had not been physically removed from the enrolled copy of the bill due to the critical shortage of time before the adjournment of the Legislature. The affidavit leaves no doubt that the proposed amendment was in fact rejected by the Conference Committee and did not become a part of the bill as passed.

For the reasons discussed above, the construction project for the law school on the campus of The University of Texas at Austin was properly authorized. The voucher issued by The University of Texas at Austin was therefore valid and Jessen is entitled to payment. We assume that the Comptroller will comply with this opinion and issue the warrant in question. In the event he fails to do so, a writ of mandamus will issue. The petition for writ of mandamus is conditionally granted.