

# The Attorney General of Texas

January 14, 1980

MARK WHITE
Attorney General

Supreme Court Building
P.O. Box 12548
Austin, TX. 78711
512/475-2501

701 Commerce. Suite 200
Dallas, TX. 75202
214/742-8944

4824 Alberta Ave.. Suite 160
El Paso, TX. 79905
915/533-3484

723 Main. Suite 610
Houston, TX. 77002
713/228-0701

806 Broadway. Suite 312
Lubbock, TX. 79401
806/747-5238

4313 N. Tenth. Suite F
McAllen, TX. 78501
512/682-4547

200 Main Plaza. Suite 400
San Antonio, TX. 78205
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable William P. Clements, Jr.
Governor of the State of Texas
Capitol Building
Austin, Texas

Opinion No. MW-128

Re: Construction of a building by the Department of Human Resources.

Dear Governor Clements:

You have requested our opinion on a number of questions regarding the construction of a building by the Texas Department of Human Resources [hereinafter DHR]. In Attorney General Opinion MW-51 (1979), we held that you were without authority to veto the following provision of the General Appropriations Act [hereinafter referred to as rider 47]:

> (47) The Texas Department of Human Resources is hereby authorized and directed to construct a state office building, in cooperation with the State Board of Control, consisting of NTE 530,000 gross square feet (400,000 net square feet). No General Revenue, Children's Assistance, or Medical Assistance funds may be used for this purpose.
>
> It is the intent of the Legislature that the building house the central administrative offices of both the Texas Department of Human Resources and the Texas Youth Council. Further, it is the intent of the Legislature that the building be constructed on State land currently owned by the Texas Department of Mental Health and Mental Retardation. The Board of Mental Health and Mental Retardation is hereby authorized and directed to transfer to the State Board of Control record title to a certain triangular-shaped tract of land 29 acres, more or less, in the north part of the City of Austin, bounded on the west by West Guadalupe Street and North Lamar Boulevard, on the north by 51st Street, on the east by Guadalupe Street and having the southern tip of the tract at the intersection of Guadalupe and West Guadalupe Streets, together with all records held by it concerning this tract.

In reaching our conclusion, we said that rider 47 does not itself set aside or dedicate funds, but merely directs and qualifies the use of funds appropriated elsewhere. We noted that rider 6 to the DHR appropriation, which rider appropriates earned federal funds, constitutes one source of funds available for the construction of the building contemplated by rider 47. After the funds have been earned by the state they are freed from federal control. Rider 6 provides:

> (6) The appropriations herein made may be used to match federal funds granted to the state for the payment of personal services, travel and other necessary expenses in connection with the administration and operation of a state program of public welfare services. The Texas Department of Human Resources is hereby authorized to receive and disburse in accordance with plans acceptable to the responsible federal agency, all federal moneys that are made available (including grants, earnings, allotments, refunds, and reimbursements) to the state for such purposes and all fees authorized by federal law, and to receive, administer, and disburse federal funds for federal programs in accordance with plans agreed upon by the Department of Human Resources and the responsible federal agency, and such other activities as come under the authority of the Department of Human Resources, and such moneys are appropriated to the specific purpose or purposes for which they are granted or otherwise made available.

Rider 6 authorizes DHR to receive and disburse three categories of funds: (1) those made available "for such purposes," i.e., payment of personal services, travel and other necessary expenses in connection with the administration and operation of a state program of public welfare services; and (2) those made available "for federal programs . . . and (3) such other activities as come under the authority of the Department of Human Resources." The rider appropriates the funds "to the specific purpose or purposes for which they are granted or otherwise made available." Expenditure of the third category of funds will not require federal approval.

We have been advised that DHR anticipates the availability of earned federal funds in an amount exceeding $178 million for the present biennium. Of this amount, only $60,650,000 has been specifically earmarked by the legislature for financing line items. As a result, earned federal funds of approximately $117 million should be available to finance the construction of the building described in rider 47. It is anticipated that the building will cost approximately $40 million. Since the Board of Human Resources is "responsible for the adoption of policies and rules for the government of the department," the board is authorized to determine the purpose or purposes for which non-earmarked funds are to be expended, and the amount to be designated for each such purpose. Human Resources Code, section 21.003.

We will now address your particular questions.

1.  Which particular funds appropriated by rider 6 may be used to finance the construction of the building for the Department of Human Resources?

Funds available for construction of the DHR building are those included within the third category described above.

> 2.  What is the monetary limit on such funds that may be expended for the construction of this building?

The entire amount of earned federal funds under category three, less the $60,650,000 specifically earmarked by the legislature, may be expended for the construction of the DHR building. Under present estimates, approximately $117 million should thus be available.

> 3.  If $100 million or $200 million is available from the particular fund or funds that may be used to finance the building, may any or all of that amount be expended?

As we have said previously, the entire amount, less that specifically earmarked, may be expended. Of course, it is anticipated that the building will cost substantially less than that amount.

> 4.  Is the construction of a building 'a purpose for which federal moneys are made available within the meaning of rider 6'?

Yes, since earned federal funds are to be used, and they are available for any purpose.

> 5.  Is the construction of a building a federal program within the meaning of rider 6, and, if so, must the Department of Human Resources and the responsible federal agency agree upon plans for the construction of this building?

Since the second category of funds is not relevant to this expenditure, it is not necessary that we answer this question.

> 6.  Is the construction of a building an activity that comes under the authority of the Department of Human Resources, and, if the Department of Human Resources has such authority, where is that authority found in the statutes?

Yes. DHR is granted broad authority "to accept, expend, and transfer funds" and to "enter into agreements" with other state agencies to accomplish the purpose of assisting needy families and individuals. Human Resources Code § 22.002(e). We cannot say that construction of a building will not assist in accomplishing this purpose. Furthermore, sections 5.01, 5.04, 5.16 and 5.17 of the new State Purchasing and General Services Act, article 601b, V.T.C.S., specify the procedure for cooperation between DHR and the State Purchasing and General Services Commission [formerly the Board of Control] in constructing a building. We believe that these provisions furnish statutory authority sufficient to sustain the validity of rider 47 which, as we have noted, merely directs or qualifies the use of funds appropriated elsewhere. See Jessen Associates, Inc. v. Bullock, 531 S.W.2d 593 (Tex. 1975).

7.  Have moneys been granted or otherwise made available for the specific purpose of constructing a building within the meaning of rider 6?

Although DHR is not granted specific statutory authority to construct the building at issue, we believe that the statutes described in our answer to question 6 furnish ample statutory authority to sustain the validity of riders 6 and 47, which do make funds available for the specific purpose of constructing a building.

8.  Are the funds appropriated for the construction of a building restricted to those appropriated in rider 6?

No, funds are also available under article 5, section 19 of the General Appropriations Act, but we believe that such funds are essentially the same as those described in rider 6.

9.  Can any of the funds appropriated in Section 19 of Article V of H.B. 558 be utilized for the purpose of constructing a building for the Department of Human Resources?

Yes, but as we have noted, such funds are essentially the same as those described in rider 6.

10.  Who has the responsibility for determining the purposes for which funds appropriated by rider 6 can be utilized, and has this been accomplished?

As we have previously indicated, the Board of Human Resources has the responsibility for determining the purposes for which rider 6 funds may be utilized, and it is our understanding that the Board has done so.

11.  Who has the responsibility for determining the amount of funds that can be utilized for a specific purpose under rider 6, and has this been accomplished?

Again, the Board of Human Resources has this responsibility, and we have been advised that it has done so.

12.  What are the purposes for which the funds appropriated in rider 6 can be utilized and what is the amount appropriated for each purpose?

Rider 6 funds may be expended under the three categories described above. The amount appropriated under each category depends upon the amount made available to DHR under various agreements with the federal government. We have previously indicated the approximate amount available.

13.  Are the funds appropriated in rider 6 'to the specific purpose or purposes for which they are granted or otherwise made available'?

Yes, according to the language of rider 6.

14. Who has the responsibility for determining the 'specific purpose or purposes' for which these funds are granted or otherwise made available, and has this been accomplished in rider 6?

The answer to this question is the same as our answer to question number 10.

15. Who has the responsibility for determining the amount of funds that are to be used for the 'specific purpose or purposes' for which these funds are granted or otherwise made available, and has this been accomplished under rider 6?

The answer to this question is the same as our answer to question number 11.

16. Are the funds appropriated by rider 6 restricted to 'plans agreed upon by the Department of Human Resources and the responsible federal agency and such other activities as come under the authority of the Department of Human Resources'?

The three categories of funds described in rider 6 have been discussed above.

17. Can the Department of Human Resources expend any federal funds received without having approval of the responsible federal agency ?

Yes, expenditure of the third category of funds described in rider 6 does not require federal approval.

18. In relation to Article V, Section 19 of H.B. 558, are the funds appropriated by this section 'to such agencies for the purposes for which the federal grant, allocation, aid, payment or reimbursement was made' subject to the legislative mandates contained in said article and section?

Yes.

19. Is this the controlling and most specific appropriation authority and expression of legislative intent in relation to the funds appropriated by said rider? If it is not, what is?

As we have noted, these funds are essentially the same as those described in rider 6, which is the more specific appropriation.

20. Who has the responsibility for determining the purposes for which funds appropriated by Article V, Section 19 can be utilized, and has this been accomplished?

As with rider 6 funds, the Board of Human Resources has such responsibility, and it is our understanding that this has been accomplished.

> 21. Who has the responsibility for determining the amount of funds appropriated by Article V, Section 19 that can be utilized for a specific purpose, and has this been accomplished?

Again, the Board of Human Resources has this responsibility, and we are advised that it has been accomplished.

> 22. What are the purposes for which the funds appropriated in Article V, Section 19 can be utilized and what is the amount appropriated for each purpose?

Article V, section 19 funds, being essentially the same as those described in rider 6, may be expended for the same purposes and in the same amounts as rider 6 funds. Therefore, our answer to question number 12 is controlling here.

> 23. Is rider 47 unconstitutional in that it attempts to amend general law by designating a particular site for the location of the Department of Human Resources in violation of Article 695(c), V.A.C.S.?

No, because as we said in our answer to question number 6, general law is sufficient to support an appropriation such as rider 47.

> 24. Must the construction of the Department of Human Resources building comply with H.B. 1673, effective September 1, 1979?

Yes.

> 25. If so, since federal funds are being used to construct this building is it a requirement that there be an enabling federal statute in accordance with H.B. 1673, Section 5.15(h), and if there must, what enabling statute authorizes the construction of this building?

Section 5.15(h) provides:

> (h) The commission may waive, suspend, or modify any provision of this article which shall be in conflict with any federal statute or any rule, regulation, or administrative procedure of any federal agency where such waiver, suspension, or modification shall be essential to the receipt of federal funds for any project. In the case of any project wholly financed from federal funds, any

standards required by the enabling federal statute or required by the rules and regulations of the administering federal agency shall be controlling.

Section 5.15(h) does not require a federal statute. It provides only that any standards required by federal statute or regulation shall control over conflicting provisions of article 601b.

26. Must the construction of the Department of Human Resources building comply with H.B. 1673?

Yes. This question is a duplicate of question number 24.

27. a) If not, under what constitutional or statutory authority is the Department of Human Resources project exempt?

In light of our answer to question 26, no answer is required.

b) If it must, where in H.B. 558 is there an appropriation to the State Purchasing and General Services Commission for the construction of this building?

The appropriation is to the Department of Human Resources rather than to the Commission.

28. By not making an appropriation to the Commission, does rider 6, Article V, Section 19, and rider 47 of H.B. 558 violate Article 3, Section 35 of the Texas Constitution by amending and modifying general law contained in H.B. 1673?

No. See answers to question numbers 6 and 23.

29. Before the appropriation of money for the construction of the Department of Human Resources building, was it necessary for a project analysis to be submitted to the budget agencies of this State in accordance with Article 678f, V.T.C.S.?

Article 678f, the predecessor statute of article 601b, was in effect at the time funds were appropriated for the project at issue here. Section 6(E) of that statute required the State Building Commission to submit to the budget agencies of the state a report listing all projects for which a project analysis was required. Nothing in article 678f, however, prohibited the legislature from appropriating funds for a project not included within the Commission's report.

30. If not, what constitutional or statutory authority is this project exempt from the provisions of Article 678f? [sic]

As we noted in our answer to question number 29, article 678f imposed certain duties on the State Building Commission, but placed no restrictions on the legislature with regard to the appropriation of funds.

> 31.  By its failure to require a project analysis for the construction of this building before making an appropriation authorizing such construction, did the legislature attempt to modify and amend general law in violation of Article 3, Section 35 of the Texas Constitution?

No.  As we have said, the statutory requirement that a project analysis be submitted spoke only to the duty of the Building Commission.  Since no statute required the legislature to have seen a project analysis before making an appropriation, the legislature did not attempt to amend general law by appropriating these funds in the absence of a project analysis.

## SUMMARY

> Rider 47 to the Department of Human Resources appropriation for the 1979-81 biennium is not unconstitutional.  The Board of Human Resources may authorize the expenditure of all non-earmarked earned federal funds in accordance with the provisions of that rider.

Very truly yours,

MARK WHITE
Attorney General of Texas

JOHN W. FAINTER, JR.
First Assistant Attorney General

TED L. HARTLEY
Executive Assistant Attorney General

Prepared by Rick Gilpin
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

C. Robert Heath, Chairman
David B. Brooks
Bob Gammage
Susan Garrison
Rick Gilpin
Bruce Youngblood