ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

May 21, 2010

The Honorable Susan Combs
Comptroller of Public Accounts
Post Office Box 13528
Austin, Texas 78711-3528

Opinion No. GA-0777

Re: The Comptroller of Public Account's imple-
mentation of article IX, section 17.10 of the
2010–2011 General Appropriations Act, which directs
allocations to the Rail Relocation and Improvement
Fund (RQ-0844-GA)

Dear Comptroller Combs:

You ask two questions regarding the possible transfer of $182 million out of the State
Highway Fund to the Rail Relocation and Improvement Fund for the 2010–2011 fiscal biennium.[1]

Article IX, section 17.10 of the current General Appropriations Act (the "Act") provides, in
relevant part:

a.  Out of the funds appropriated above, and on a finding by the
    comptroller under subsection (b) of this rider, an amount of $91
    million is allocated out of the State Highway Fund for state fiscal
    year 2010 and an amount of $91 million is allocated out of the
    State Highway Fund for state fiscal year 2011 for transfer to the
    Texas Rail Relocation and Improvement Fund. The amounts are
    allocated for expenditure out of the Texas Rail Relocation and
    Improvement Fund to the Department of Transportation for the
    purposes described by Section 49-o, Article III, Texas
    Constitution.

b.  The allocations under subsection (a) of this rider may be made
    only if the comptroller issues a finding of fact that the following
    items result in a net increase for the 2010–2011 state fiscal
    biennium of at least $182 million over the 2008–2009 state fiscal
    biennium:

---

[1]Request Letter at 2 (*available at* http://www.texasattorneygeneral.gov).

(1)    the net impact of enacted revenue measures on incoming revenue of the State Highway Fund that is not dedicated under Article 8, Section 7-a of the Texas Constitution;

(2)    as a gain, any reduction in appropriations made from State Highway Fund No. []006 to state agencies other than the Department of Transportation; and

(3)    as a loss, any reduction in appropriations made to the Department of Transportation from the General Revenue Fund.

General Appropriations Act, 81st Leg., R.S., ch. 1424, art. IX, § 17.10(a)–(b), 2009 Tex. Gen. Laws 4483, 5374. You seek clarification about the meaning of section 17.10(b), specifically:

> 1) Should State Highway Fund "transfers of appropriations" in 2008–09 to the Health and Human Services Commission and the Texas Workforce Commission be included as a gain within the calculations required by Section 17.10(b)(2)?

> 2) Should State Highway Fund "transfers of appropriations" in 2010–11 to the newly created Department of Motor Vehicles be included within the calculations required by Section 17.10(b)(2)?

Request Letter at 2.

A recent opinion of this office addressed an issue related to your second question, so we will respond to that question first. You ask whether "State Highway Fund 'transfers of appropriations' in 2010–11 to the newly created Department of Motor Vehicles [should] be included within the calculations required by Section 17.10(b)(2)." *Id.* In Attorney General Opinion GA-0776, this office said that a court would likely conclude that the transfer of funds from the Texas Department of Transportation ("TxDOT") to the Department of Motor Vehicles ("DMV") did not constitute an "appropriation." Rather, based on the reasoning of the Texas Supreme Court in *Jessen Associates, Inc. v. Bullock*, and the plain language of the Act, we opined that a court would likely conclude that the Act directed the use of funds and personnel that were initially and expressly appropriated to TxDOT as of the effective date of the 2010–2011 Act. *Jessen Assocs., Inc. v. Bullock*, 531 S.W.2d 593, 599 (Tex. 1975); *see* Tex. Att'y Gen. Op. No. GA-0776 at 4. The language of section 17.10(b)(2) addresses "reductions in appropriations." Because the transfer to the DMV likely did not represent an appropriation to the DMV, it follows that a court could reasonably conclude that such transfers to the newly-created DMV should not be included within the calculations required by section 17.10(b)(2).

You also ask whether "State Highway Fund 'transfers of appropriations' in 2008–09 to the Health and Human Services Commission and the Texas Workforce Commission [should] be

included as a gain within the calculations required by Section 17.10(b)(2)." Request Letter at 2. The 2008–2009 appropriation to TxDOT required that certain amounts from Fund No. 006 be transferred: TxDOT "shall transfer not less than $53,902,291 in State Highway Fund No. 006 funds to the Health and Human Services Commission" ("HHSC"). Moreover, TxDOT "shall transfer not less than $6,829,352 in State Highway Fund No. 006 funds to the Texas Workforce Commission" ("TWC"). General Appropriations Act, 80th Leg., R.S., ch. 1428, art. IX, § 19.77(e)(1), (3), 2007 Tex. Gen. Laws 4911, 5798. The current appropriations act does not include transfers to HHSC or TWC. *See* Request Letter at 2.

It is a fundamental rule of statutory construction that courts, and by extension this office, must attempt to ascertain the intent of the Legislature. *Osterberg v. Peca*, 12 S.W.3d 31, 38 (Tex. 2000). We must apply this rule of statutory construction when considering provisions of the Act. *See Jessen*, 531 S.W.2d at 599 (stating that "this rule applies also in determining what constitutes an item of appropriation"). "[S]tatutory provisions are not isolated from their surrounding text and construed apart from their context." *Id.* at 601. For example, in considering the validity of a rider in an appropriations act, the *Jessen* court, declaring that statutory provisions must be read as a whole and in context, declined to invalidate the rider on the basis of one questionable section. *Id.* Therefore, our duty here must be to effectuate the legislative intent and to read statutes, including riders, as a whole and in context.

It is not clear how a court would treat the 2008–2009 transfers to HHSC and TWC under section 17.10(b)(2). A court could apply the reasoning utilized in GA-0776 to conclude that, because the Legislature transferred to HHSC and TWC amounts initially appropriated to TxDOT, such transfers are not appropriations, but merely transfers that direct the use of funds appropriated elsewhere. *See* General Appropriations Act, 80th Leg., R.S., ch. 1428, art. VII, 2007 Tex. Gen. Laws 4911, 5576 (Strategy D.1.2.: Client Transportation Services). Under such a construction, a court might not view the transfers as "appropriations made . . . to state agencies other than [TxDOT]." If a court were to take that position, then for purposes of section 17.10(b)(2), the amount appropriated to TxDOT will not have changed from one biennium to the next. Therefore, the fact that TxDOT is not instructed to make these transfers in 2010–2011, as it was in 2008–2009, would not be considered a "reduction in appropriations made to state agencies other than [TxDOT]." The end result of this construction would be that there is no resulting "gain" to TxDOT within the calculations required by section 17.10(b)(2).

A court could, however, look to the facts and circumstances surrounding, and the effects of, the 2008–2009 transfers to HHSC and TWC, particularly as they compare to the transfers to the DMV, in determining the appropriate treatment of the transfers under section 17.10(b)(2). The facts and circumstances of the transfers to HHSC and TWC differ substantially from those associated with the transfer to the DMV in 2010–2011. When making a determination about what the Legislature intended when it used the phrase "reduction in appropriations made . . . to state agencies other than TxDOT" in section 17.10(b)(2), a court could take note of the following.

The language of the Act transferring funds to the DMV was contingent upon the creation of the DMV. Under House Bill 3097, which created the DMV, and section 17.10(b)(2) of the Act, the

Legislature transferred from TxDOT to the DMV a number of responsibilities, together with all funds and positions associated with those responsibilities. The transfer of such duties and a commensurate amount of resources pursuant to those provisions should not affect the funding available to TxDOT for functions not transferred to the DMV.

In contrast, the Legislature in 2008–2009 appropriated a particular amount of money to TxDOT, and then directed TxDOT to transfer those funds to HHSC and TWC. When the Legislature appropriated money to TxDOT in 2010–2011, it did not reenact the riders transferring funds to those agencies. The Legislature's decision not to reenact the riders resulted in the availability of additional funding to TxDOT for its functions. Briefing received by this office argues that the intent of the Legislature in enacting section 17.10 of the Act was to ensure that TxDOT had available at least the same amount of funds for TxDOT functions not transferred to the DMV.[2] Under such a construction, a court could conclude that, because the Legislature's decision not to reenact the provisions transferring funds to HHSC and TWC resulted in the availability of additional funds to TxDOT for the 2010-2011 biennium, there has been a "reduction in appropriations" from Fund 006 to agencies other than TxDOT. Thus, such amounts should be included as a gain for purposes of the section 17.10(b)(2) calculation.

Section 17.10(b) of the Act makes the allocations under subsection (a) of the rider contingent upon a finding of fact by the Comptroller that the calculations set forth in section 17.10(b) "result in a net increase for the 2010–2011 state fiscal biennium of at least $182 million over the 2008–2009 state fiscal biennium." In conditioning the allocations on a finding of fact from the Comptroller, the Legislature charged the implementation of the rider to the Comptroller. In such event, the courts will accord some deference to the Comptroller's interpretation of the Act, so long as that construction does not contradict the rider's plain language and is reasonable. *See In re Sw. Bell Tel. Co., L.P.,* 226 S.W.3d 400, 403 (Tex. 2007) ("courts should defer to appropriate administrative agencies when . . . the agency is staffed with experts trained in handling complex problems within the agency's purview, and . . . great benefit is derived from the agency's uniform interpretation of laws within its purview"). With regard to the question of whether the 2008–2009 transfers to the HHSC and TWC should be included as a "gain" within the calculations required by section 17.10(b)(2), we believe that a court could conclude that either result would be reasonable and not contrary to the plain meaning of the rider. As such, the initial determination is within the sound discretion of the Comptroller.

---

[2]*See* Brief from Bruce Todd, Executive Director, Texas Rail Relocation and Improvement Association, to Honorable Susan Combs at 2–3 (Oct. 23, 2009) (on file with the Opinion Committee).

### S U M M A R Y

Because a court would likely determine that, under the 2010–2011 General Appropriations Act, the transfer of amounts from the Texas Department of Transportation to the Department of Motor Vehicles (the "DMV") did not represent an appropriation to that agency, it follows that a court would likely conclude that such transfers to the newly-created DMV should not be included within the calculations required by section 17.10(b)(2), article IX of the Act.

It is unclear whether a court would conclude that the transfer of funds to the Health and Human Services Commission and the Texas Workforce Commission in the 2008–2009 General Appropriations Act, and the absence of such transfer in the 2010–2011 General Appropriations Act, represents a "gain" for purposes of the section 17.10(b)(2) calculation. In conditioning potential allocations to the Texas Rail Relocation and Improvement Fund on a finding of fact from the Comptroller of Public Accounts, the Legislature charged the Comptroller with the implementation of the rider. Because a court could conclude that more than one construction is reasonable and not in conflict with the plain language of the rider, the initial determination of whether the transfers should be included as a "gain" for purposes of the section 17.10(b)(2) calculation is within the sound discretion of the Comptroller.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

ANDREW WEBER
First Assistant Attorney General

JONATHAN K. FRELS
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Rick Gilpin
Assistant Attorney General, Opinion Committee