## SCHROCK et al. v. HYLTON et al.

### No. 12868.

Court of Civil Appeals of Texas. Dallas.

Oct. 14, 1939.

Rehearing Denied Nov. 13, 1939.

Geo. Clifton Edwards, of Dallas, for appellants.

Taylor, Irwin & Irwin, Dean Gauldin, and Wallace B. Moore, all of Dallas, for appellees.

LOONEY, Justice.

This suit is an election contest. T. M. Schrock, A. M. Irwin, W. W. Evers, and A. J. Smith contested the election of B. F. Hylton, R. E. Curtis, Ben Prevatil, and R. E. Prine, as supervisors, and H. C. McDonald contested the election of C. J. Traquair, as assessor and collector of taxes, in and for Dallas County Lakeland Terrace Fresh Water Supply District No. 12. The contestants were incumbents, seeking re-election at an election held January 3, 1939, for five supervisors and an assessor and collector of taxes for the district. The results declared were as follows: In favor of L. C. Brooks, as supervisor, the validity of whose election is not involved; also, in favor of contestees, Hylton, Prine, Prevatil and Curtis, as supervisors, and Traquair, as assessor and collector of taxes.

In the trial court, contestants were defeated and appealed to this Court. On original submission, we held the election void, because the same was conducted without a certified poll list of the qualified voters of the Water District, as required by general statute (Art. 2975), therefore, set aside the judgment of the trial court and rendered judgment for contestants, nullifying and holding the election for naught.

Our decision was largely based upon the case of Yett v. Cook, 115 Tex. 205, 281 S.W. 837, by the Supreme Court, on the assumption that the general statutes brought under construction in the Yett-Cook case, were applicable and controlled the election held in the Water District, but, after reconsidering the question, we have reached the conclusion that, we erred

in holding the election void and in nullifying same, for the reasons stated.

An opinion by Mr. BOND, Chief Justice, presented to our conference, and concurred in by other members, sets forth our unanimous opinion on the decisive questions involved. His opinion reads:

"The statute creating the district expressly provides for the manner of its creation, the holding of elections (Art. 7889), the form of ballots (Art. 7890), and the necessary prerequisites for a person who offers to vote (Art. 7891, and Art. 7930—1, Vernon's Ann.Civ.St.). Article 7891 provides: 'Every person who offers to vote in any election held under the provisions of this chapter shall take the following oath before the presiding judge of the polling place where he offers to vote, and such judge is authorized to administer same: "I do solemnly swear that I am a qualified voter of ——— County and that I am a resident property taxpayer of the proposed Fresh Water Supply District voted on at this election, and have not voted before in this election."'; and Art. 7930—1, § 7, provides: 'Every person offering to vote at any election held under the provisions of this Act shall take the following oath before the presiding judge at the polling place where he offers to vote, and such judge is authorized to administer the same: "I do solemnly swear that I am a qualified voter of the ——— County Fresh Water Supply District No. ——— (inserting the name and number of the District) and have not voted before in this election."' Thus it will be seen that the Legislature has provided effective means of preventing repeating at elections, qualifying every voter offering to vote at any election held under the provisions of the Act, in that, the voter must be qualified under Sec. 2, Art. 6 of the Constitution, Vernon's Ann.St. (article on suffrage), that he is a resident taxpayer of the district, and that he had not voted before in the election in which he offers to vote. The right to vote is expressly granted by statute to any person possessing the qualifications prescribed, and who shall subscribe to the oath designed to insure a fair election in such district. There is no provision of the statute requiring a poll list of the qualified voters of the district, as is required in the General Election Statute; therefore, presiding officers of such elections are without authority to deprive a qualified voter, who has subscribed to the prescribed oath, affecting elections in Fresh Water Supply Districts, of the right to vote, merely because of the absence of a poll list at the place of voting.

"The election in question was held under and governed by the provisions of the special statute relating to Fresh Water Districts, and not under the General Election Statute. General election law does not apply to a special election held under a special law. Wallis v. Williams, 101 Tex. 395, 108 S.W. 153. Therefore, the requirements of the special statute, being in the interest of pure elections, should be complied with, and so far as this record discloses, same was done. No voter should be disfranchised, or a pure election declared null and the majority of the voters set aside, merely because of the failure of election officers to have a poll list at the place of voting, which is not required in such elections.

"The case of Yett v. Cook, 115 Tex. 205, 281 S.W. 837, quoted in the original opinion, and on which contestants rely for reversal, throws no light upon the propositions here involved: First, the facts of that case have no relation to an election-contest; second, that was a suit for mandamus, asking that an election be ordered in the City of Austin, where the city ordinance required all elections to be held under the General Election Law. The city council declined to order the election in that case because they did not have sufficient time to supply the election officers with the necessary supplies, including list of voters. The Supreme Court, in refusing the mandamus, held, in effect, that the list was a necessary prerequisite for a legal election under the city charter and the council was clearly within its rights in declining to call the election. Obviously, such is not the case at bar. The election in question having been held by virtue of a special statute, the provisions thereof take precedence over the General Election Law, which requires a list of the qualified voters to be exhibited at the polling place. Therefore, a poll tax list of taxpaying voters not being a necessary prerequisite to support a legal election held under the Fresh Water Supply District Statutes, the cited authority does not support the conclusion expressed.

"Furthermore, this being a contest of an election suit, same must be determined under the express provisions of the

statute relating to the subject of election-contests (article 3041 et seq., R.S. 1925). Art. 3054, supra, provides: 'If it appears on the trial of any contest provided for in article 3045 [county office] that it is impossible to ascertain the true result of the election as to the office about which the contest is made, either from the returns of the election or from any evidence within reach, or from the returns considered in connection with other evidence, or should it appear from the evidence that such a number of legal voters were, by the officers or managers of the election, denied the privilege of voting as, had they been allowed to vote, would have materially changed the result, the court shall adjudge such election void, and direct the proper officers to order another election to fill said office; which election shall be ordered and held and returns thereof made in all respects as required by the general election laws of the State.'

■ "So, for the purpose of this opinion, assuming that the election was held under and governed by the provisions of the general election laws of the State of Texas, which evidently was not the case, by virtue of the above statute, Art. 3054, supra, the burden of proof rested upon contestants to show that a poll list at the polling place would have materially changed the result of the election, or that the absence of such list did materially change the result; thus, in the absence of such showing, the failure of the election officers to have a certified list at the polling place at the time the election was held, becomes immaterial.

"In State ex rel. Paggi v. Fletcher, Tex. Civ.App., 50 S.W.2d 450, 452, in an election-contest, among other assignments of error, the contention was made, as here, to void the election, that a list of voters was not furnished the election officers in compliance with Art. 2975, R.S. The court said: 'Because the voting lists furnished the election judges failed to furnish all the information prescribed by article 2975, appellants insist that the election was absolutely void. * * * In support of their proposition appellants cite Yett v. Cook, 115 Tex. 205, 281 S.W. 837, and articles 2975, 3005, and 3012 of the Revised Statutes. While it is true that the Supreme Court, in Yett v. Cook, discussed the office of the list of voters provided for by article 2975 and in effect held that the provisions of this article were mandatory, the facts of that case have no relation to the facts of this

case, and what was said there can throw but little light on the proposition before us. * * * To have relief because its provisions were not complied with, appellants rested under the burden of alleging and proving "injury," which was not done. The right to vote is a constitutional right, and, while the Legislature has the power to establish rules regulating this right, such regulations should generally be given a liberal construction to effectuate the constitutional right of suffrage. Regulations which, from their very nature, are deemed absolutely essential to accomplish the purposes of constitutional suffrage, are deemed mandatory; such as, that voting shall be by ballot, that it shall take place on a certain day within certain precincts, etc. But regulations that are nothing more than mere directions for holding the election are considered merely formal in character and should be construed as directory. This is the clear holding of the Supreme Court in McKinney v. O'Connor, 26 Tex. 5, and Fowler v. State, 68 Tex. 30, 3 S.W. 255; also of this court in State [ex rel. Pace] v. Logan (Tex.Civ.App.) 5 S.W.2d 247, and Scurlock v. Wingate (Tex.Civ.App.) 283 S.W. 307. See, also, Turner v. Teller (Tex.Civ.App.) 275 S.W. 115; Bass v. Lawrence (Tex.Civ.App.) 300 S.W. 207.'

"In Buchanan v. Graham, 36 Tex.Civ. App. 468, 81 S.W. 1237, 1239, in sustaining an election-contest, the court said: 'It is universally held, we believe, that the prime object to be attained in an election is to ascertain the expressed will of the electors participating in such election; and that, where such election is fairly and honestly held, and the will of the electors is readily ascertained therefrom, mere irregularities will not render the election void.' This point was directly decided in Hill v. Smithville Independent School Dist., Tex.Com. App., 251 S.W. 209, 211. The Court, in denying the contest, said: 'As to the claim of irregularity urged by the plaintiffs in error as invalidating the election authorizing the 60 cent tax, the rule is that statutes regulating the manner of holding an election are merely directory, and a departure from their provisions will not, ordinarily, invalidate an election, unless such departure or such irregularity have affected or changed the result of the election. Dillon on Municipal Corporations (5th Ed.) vol. 1, p. 642; McCrary on Elections, § 200; Wilmarth v. Reagan (Tex.Civ.App.) 231 S.W. 445.'

"In Border et al. v. Abell, County Atty., Tex.Civ.App., 111 S.W.2d 1186, 1188, the contestants set up various grounds upon which they contended the election was illegal, therefore void. The court said: '* * * in a statutory election contest within the purview of cited chapter 9, title 50, article 3041 et seq., of our Revised Statutes, such as this one was, the scope of the court's inquiry is limited to matters pertaining strictly and directly to the election itself, together with happenings on the date thereof, such as the casting and counting of the ballots voted therein, as well as the action and conduct of the officers holding it. R.S. arts. 3053, 3054, 3069; Norman v. Thompson, 96 Tex. 250, 72 S.W. 62; Turner v. Allen, Tex.Civ.App., 254 S.W. 630; Ladd v. Yett, Tex.Civ.App., 273 S.W. 1006; Warren v. Robinson, Tex. Civ.App., 32 S.W.2d 871.' And, in a very recent case, Marks v. Jackson, Tex.Civ. App., 130 S.W.2d 925, 927, the election officers did not have a properly certified list either of the qualified voters or the polls, and there was, as in this case, no evidence which would tend to show that any voter was denied the right to vote because of any condition about a poll list. There was no testimony that any voter was denied the privilege of voting because of the absence of a certified list of those who had rendered property; and there was no evidence that any person who had a right to vote was denied that privilege. The court, quoting with approval the foregoing holding in the Border-Abell case, further said:

" 'In an election-contest, the burden is on the contestants to allege and prove either that a different result should have been reached by counting or not counting certain specified votes; or that the irregularities in the conduct of it were such as to render it impossible to determine the true will of the majority of the voters participating in the election; and irregularities in the conduct of the election, which cannot be demonstrated to have materially affected the result, are immaterial. Hill v. Smithville, etc., (Tex.Com.App.), 251 S.W. 209; Kincannon v. Mills, (Tex.Civ. App.), 275 S.W. 1083, 1084; McCormick v. Jester, 53 Tex.Civ.App. 306, 115 S.W. 278; State [ex rel. Rea] v. Etheridge (Tex.Civ.App.), 20 S.W.(2d) 808; State [ex rel. Paggi] v. Fletcher (Tex.Civ.App.), 50 S.W.(2d) 450; Wilmarth v. Reagan (Tex.Civ.App.) 231 S.W. 445.'

"The decisions cited on the question of whether the provisions of the law, relative to election officers having a properly certified list of the qualified voters or of the polls, are mandatory or directory, are clearly in favor of the rule that, the failure of either the voters or election officers to perform their respective duties at the polls according to the letter of the statute, where such failure has not prevented a fair election, is immaterial and not ground to set aside an election otherwise fairly held. In McCrary on Elections, 4th Ed., § 724, the author says: 'The justice of this rule is apparent, and it may be said to be the underlying principle to be applied in determining this question. The requirements of the law upon the electors are in the interest of pure elections, and should be complied with at least in substance, but to disfranchise the voter because of the mistakes or omissions of election officers would be to put him entirely at the mercy of political manipulators. The performance by the election officers of the duties imposed upon them can be reasonably well secured by providing a penalty for failure so to do.'

"An election-contest for office is not a civil action, but is a special proceeding prescribed by law. Courts are limited in their investigation to such subjects as are specified in the statute. Ladd v. Yett, Tex.Civ.App., 273 S.W. 1006. Where the law provides a mode of deciding cases of election-contests, the contest must be based upon the grounds specified. Thus, the jurisdiction of the courts is limited to such matters as tend to impeach the fairness of the vote, and before an election will be set aside, it must clearly appear that the fairness and purity thereof was materially interfered with, and it must be made to appear that, by reason thereof, the true result cannot be ascertained with certainty. Garitty v. Halbert, Tex.Civ.App., 235 S.W. 231."

For reasons stated in the opinion by Chief Justice BOND, we sustain contestees' motion for rehearing, set aside our former judgment, and withdraw the original opinion filed in the case, thus presenting for consideration the other grounds alleged, not considered or discussed on original submission, because of the disposition made of the case.

It is contended that three of the candidates, that is, Hylton, Traquair, and

Garrett (Hylton and Traquair declared elected) were ineligible, because, neither had resided in the water district six months next preceding the election, and that, if the votes cast for them are disregarded, the result would be different from that declared, in that, in such event, contestants, Schrock and McDonald, would have been declared elected, instead of Hylton and Traquair. This contention is based on the assumption that, to have been eligible candidates for supervisor or assessor and collector, of the water district, they should have had a residence in the water district for at least six months next preceding the election, as required by article 2927 of the general election statute. Although residents, it may be conceded that the persons named had not resided in the water district six months next preceding the election, yet we do not think that fact was a disqualification, because, in our opinion, the statute invoked is not applicable. The applicable statutes, we think, are found in the chapter providing for the establishment and government of "Fresh Water Supply Districts". (Article 7881 et seq.) Article 7895 of that chapter makes provisions for the election of an assessor and collector of taxes and prescribes that "he shall be a resident of the district and a qualified voter in the district". Article 7900, with reference to the qualifications of candidates for supervisor, reads: "No person shall be elected as supervisor for any district unless he is a resident thereof and owns land subject to taxation therein, and unless at the time of such election he shall be more than twenty-one years of age." But it will be observed that in neither instance does the statute require, as an element of eligibility, that the candidate shall have resided in the district any particular length of time next preceding the election. So, we conclude that, as the persons whose eligibility is questioned were eligible under the provisions of the controlling statute, contestants' assignments and propositions relating to that subject should be overruled.

█ The further contention is made that three illegal votes were cast for the candidates declared elected, and that one legal vote intended for contestants was rejected, but for which, the result would have been different. The controlling statute provides that only resident property taxpayers of the water district are entitled to vote (see article 7891). It is undisputed that, two of the three persons whose votes are challenged, that is, Mr. Armstrong and Mr. Irwin, were not residents of the water district at the time of the election, therefore, being disqualified, should not have been permitted to vote; hence, their votes must be rejected. We also find from undisputed evidence that, J. Edwin Thomas, who offered but was not permitted to vote, was a qualified voter of Dallas County and a resident property taxpayer of the water district at the time, therefore, being qualified, should have been permitted to vote, and, if permitted, would have voted the "Smith" ticket (with one exception), which included Schrock and McDonald, but would also have voted for Curtis, a candidate for supervisor on the opposing ticket.

So, after deducting the two illegal votes and adding the legal vote, as should be done, we have the following results: Prine received 47 votes, Hylton, 47, and Prevatil 46, for supervisors, and were elected; but Curtis and Schrock each having received 42 votes, for supervisor, and Traquair and McDonald each having received 41 votes, for assessor and collector, there was no election.

█ It follows from these conclusions that, Prine, Hylton, and Prevatil were elected supervisors, and that, owing to the tie between Curtis and Schrock, Traquair and McDonald, no one was elected to these positions. However, Schrock and McDonald, being incumbents, are authorized to continue to perform the duties of their offices until their successors shall be duly elected and qualified, as provided by Section 17 of Article 16 of the Constitution, Vernon's Ann.St. Accordingly, the judgment of the trial court will be and is hereby reformed and, as reformed, is affirmed. The costs incurred in this and in the court below will be taxed, apportioned and adjudged against the litigants, as follows: against A. M. Irwin, W. W. Evers, and A. J. Smith, one-fifth each; against T. M. Schrock, R. E. Curtis, C. J. Traquair, and H. C. McDonald, one-tenth each.

Reformed and, as reformed, affirmed.