Lorenzo BROWN, Appellant,

v.

Dwight PATTERSON and R. B. Brown, Appellees.

No. 20647.

Court of Civil Appeals of Texas, Dallas.

Nov. 20, 1980.

Tom S. McCorkle, Jr., McCorkle, Westerburg & Felton, Dallas, for appellant.

Robert B. Crotty, Akin, Gump, Hauer & Feld, Dallas, for appellees.

Before GUITTARD, C. J., and ROBERTSON and AKIN, JJ.

GUITTARD, Chief Justice.

Appellant Lorenzo Brown was appointed to fill a vacancy in the board of trustees of the Dallas Independent School District for trustee district number five. Appellees Dwight Patterson and R. B. Brown brought separate suits to prevent him from taking office on the ground that appellant had not been a resident of trustee district number five for six months immediately preceding his appointment. The trial court consolidated the suits and granted relief on the ground that the six–months' residence requirement in article 1.05 of the Texas Election Code of 1951 (Vernon Supp. 1980) controls. Lorenzo Brown appeals on the ground that this requirement is in conflict with the provisions of the particular statute governing election of school trustees, which contains no such requirement. Tex.Rev. Civ.Stat.Ann. art. 2783d, as amended by Tex. Laws 1973, ch. 211, at 486. We find no conflict. Consequently, we affirm.

Appellant was appointed to fill the vacancy on June 23, 1980. Although he had lived in the Dallas Independent School District more than six months, he admits that he had not lived in trustee district number five for the six months immediately preceding his appointment.

Article 1.05 of the Election Code prescribes generally the qualifications of persons elected or appointed to public office. Pertinent provisions of that article are as follows:

Subdivision 1. *No person shall be eligible to be* a candidate for, or to be elected or *appointed to, any public elective office in this state unless he is a citizen* of the United States eligible to hold such office under the Constitution and laws of this state, is not mentally incompetent as determined by a court, has not been convicted of a felony for which he has *not been pardoned or had* his full rights of citizenship restored by other official action, and will be 18 years of age or older on the commencement of the term to be filled at the election or on the date of his appointment, and unless he will have resided in this state for a period of 12 months next preceding the applicable date specified below, *and for any public office which is less than statewide, shall have resided for six months next preceding such date in the district, county, precinct, municipality or other political subdivision for which the office is to be filled*: ....

Subdivision 2. *The foregoing requirements do not apply to any office for which the* Constitution or *statutes* of the United States or *of this state* prescribe the exclusive qualifications for the office or *prescribe qualifications in conflict herewith,* and in such case the provisions of such other laws control. [Emphasis added.]

Appellant contends that conflicting qualifications are prescribed by article 2783d, as amended. Pertinent provisions of that article are found in subdivision (d) of section 6, as follows:

*For the first election held under this Section, it shall not be necessary that a person be a resident within the Trustee District from which he seeks to be elected.* However, it is hereby required that all persons elected shall reside and have their permanent place of residence within the Trustee District from which elected within not more than ninety (90) days after the date of the canvass of the returns of said election or within sixty (60) days after the termination of judicial proceedings in the event of any contest for the office of trustee. *For all subsequent elections, residence within the Trustee District from which a person seeks to be a candidate at the time of filing for office shall be a prerequisite to filing.* Removal from the Trustee District from which elected during the term for which elected, or failure to move therein after the first election as herein required, shall constitute a vacation of office by the removing or failing trustee. *In case of a vacancy* caused by death or resignation or removal from or failure to move into the Trustee District from which such member is elected, *the remaining members of the Board shall select a suitable person residing in the applicable Trustee District to fill the unexpired term* of the vacating, resigning or deceased member, who shall serve until the next biennial election, and if the term has not expired a person shall be elected for the remaining unexpired term of the vacating, resigning or deceased member; otherwise, for a full term of four (4) years. [Emphasis added.]

Appellant insists that we should construe the two statutes in question literally, without regard to any consideration of the public policy on which they are based. We cannot agree. The legislature itself has authorized us to look beyond the literal statutory language and consider its underlying purposes. Article 10 of the Texas Revised Civil Statutes (Vernon 1969) re-quires us to "look diligently for the intention of the Legislature, keeping in view at all times the old law, the evil and the remedy." Similar principles of statutory construction have been codified in the Code Construction Act, article 5429b–2 of the Texas Revised Civil Statutes (Vernon Supp. 1980), which, though not directly applicable to the statutes now before us, also provides guidance. Section 3.01(3) of that Act recognizes a presumption that "a just and reasonable result is intended," and section 3.03 provides that regardless of whether a statute is considered ambiguous on its face, a court may consider "the object sought to be attained," "former statutory provisions, including laws on the same or similar subjects," and "the consequences of a particular construction." Although these principles of construction do not authorize us to impose our own notions of public policy, they do require us to determine the legislative purpose from a consideration of the statute as a whole rather than from a literal application of particular statutory language. *See Calvert v. British–American Oil Producing Co.,* 397 S.W.2d 839, 842 (Tex. 1965); *Miers v. Brouse,* 153 Tex. 511, 271 S.W.2d 419, 421 (1954); *Edwards v. Morton,* 92 Tex. 152, 153, 46 S.W. 792, 793 (1898); *Smith v. Smith,* 519 S.W.2d 152, 153–54 (Tex.Civ.App.–Dallas 1974, writ ref'd n.r.e.).

When two statutes are alleged to be in conflict, additional principles come into play. If there is a clear conflict, the later expression of legislative intent controls, and to that extent the later statute will be held to have repealed the earlier statute. *Texas State Board of Pharmacy v. Kittman,* 550 S.W.2d 104, 106–107 (Tex.Civ. App.–Tyler 1977, no writ); *Halsell v. Texas Water Commission,* 380 S.W.2d 1, 15 (Tex. Civ.App.–Austin 1964, writ ref'd n.r.e.); *State v. Jackson,* 370 S.W.2d 797, 800 (Tex. Civ.App.–Houston 1963), *aff'd* 376 S.W.2d 341 (Tex.1964). Repeals by implication, however, are not favored, and, if there is no positive repugnance between the two, they will be harmonized so as to give effect to both. *Standard v. Sadler,* 383 S.W.2d 391, 395 (Tex.1964); *Gordon v. Lake,* 163 Tex.

392, 356 S.W.2d 138, 139 (1962). Two statutes dealing with the same subject matter, though enacted at different legislative sessions, will be construed together and their provisions harmonized to the extent possible. *Jessen Associates, Inc. v. Bullock*, 531 S.W.2d 593, 600 (Tex.1975); *Duval Corp. v. Sadler*, 407 S.W.2d 493, 497 (Tex.1966); *Wintermann v. McDonald*, 129 Tex. 275, 102 S.W.2d 167, 171 (1937), *reh. denied* 104 S.W.2d 4.

The principles concerning conflicts between statutes have limited application to our present problem because article 1.05 of the Election Code directs how any conflict shall be resolved by providing, in effect, that if any other statute prescribes conflicting qualifications for candidates or appointees, the provisions of such other statute should control. Nevertheless, in determining whether there is actually a conflict between the residence requirements of article 1.05 and article 2783d, it is important to determine the policy on which each is based and the legislative background of each.

■ The general residence requirements of subdivision 1 of article 1.05 are taken from former article 2927 of the Texas Revised Civil Statutes of 1925. This statute was originally enacted in 1895. Tex. Laws 1895 at 81. Thus, for almost a century the fixed public policy of this state, as well as its established political tradition, has been that a candidate for public office must have been a resident of the particular district or precinct from which he is elected for at least six months. The obvious purpose of this provision is to provide better representation by assuring that voters will be better acquainted with the qualifications and views of the candidates and that candidates will be better acquainted with and responsive to the needs and desires of the voters.

Article 2783d, on the other hand, was originally a provision for election of school trustees without any reference to their qualifications which, presumably, were provided by general law. *See* Tex. Laws 1947, ch. 171, at 276. In its original form, it provided for separation of certain independent school districts from municipal control,

and section 6 provided that incumbent trustees should continue to serve until their terms expired. At that time, no provision was made for single–member districts, and all trustees were elected at large. Consequently, when this statute was first enacted, none if its provisions prevented application of the general residence requirements of former article 2927.

In 1949 section 6 was amended to provide for nine trustees, of which three should be elected at large and six from single–member districts, with five trustees to be elected at the first election following. Tex. Laws 1949, ch. 391, at 728. No reference was made to the residence of any candidate or appointee, and, therefore, the general requirements of former article 2927 remained applicable so that each trustee elected from a single–member district must have resided within that district for a period of six months.

Section 6 of article 2783d was again amended in 1973 to provide that all nine trustees should be elected from single–member districts for staggered terms. Subsection (d) of the 1973 amendment is quoted above. It introduces residence requirements for the first time. Subsection (d) expressly provides that at the first election of trustees from the nine single–member districts, a candidate was not required to be a resident of the applicable trustee district, but was required to move into the district within a prescribed period after the election. To make sure that this transitional provision was not taken as applicable to subsequent elections, the amendment further provides that for subsequent elections residence within the applicable trustee district shall be a prerequisite for filing as a candidate, that removal from the district shall vacate the office, and that any person selected to fill a vacancy shall reside in the applicable district. Except with respect to the first election, there is no indication in the amendment of any intent to change the previous requirement of six–months' residence within each trustee district, as previously applicable under former article 2927, which, in the meantime, had been re–enact-

ed as article 1.05 of the Election Code. Such a departure from the long–established policy and political tradition of the state should not be attributed to the legislature in the absence of express and mandatory language.

No such express and mandatory language is found in the 1973 amendment to article 2783d. If, as appellant insists, we look only to the literal language of the amendment, there is no positive repugnancy between it and the Election Code. The amendment says nothing about the previous residence of candidates or appointees after the initial election of trustees from the nine single–member districts. It provides only that candidates shall be residents of the trustee district for which they seek election at the time of filing, and that appointees shall be residents at the time of their appointment. Appellant asks us to go beyond the literal meaning of this language and draw the implication of an intent to exclude any requirement of six months' residence before that time.

■ We cannot accept this negative implication as the only proper guide to the legislative will. Rather, we must look to the underlying purpose of the statute, as we are authorized to do by article 10 and the Code Construction Act, as discussed above. When we look at the purpose underlying the 1973 amendment to article 2783d, the legislative intent is clear. The purpose was basically the same as the residence requirement of the Election Code, namely, that school trustees should be elected by districts so that they would provide better representation of the voters in their respective districts. In only one respect was that policy overridden. For the first election after the districts were changed from six to nine, a candidate was not required to be a resident of his district, but was required to move into it after taking office. In that case, the eligibility of incumbent trustees for re–election, and, therefore, continuity of administration of the affairs of the district, was apparently thought to outweigh the policy underlying article 1.05 of the Election Code, which would have required six months' resi-

dence in the new district. That consideration, of course, is inapplicable to subsequent elections and appointments. The provisions concerning residence of candidates in subsequent elections and also concerning residence of appointees was apparently inserted for the purpose of negating any implication that the exemption from the general residence requirement for the first election would also be applicable to subsequent elections and appointments.

■ This analysis of the apparent purpose of the amendment demonstrates that except for the first election, the policy underlying the amendment to section 6 is identical with that underlying the residence requirement of the Election Code. Thus, we can give full effect to both statutes and their underlying policies by holding that there is no conflict between the residence provisions of the 1973 amendment and those in article 1.05 of the Election Code.

If we consider the consequences of a contrary holding, as we are authorized to do by the Code Construction Act, Tex.Rev.Civ. Stat.Ann. art. 5429b–2, § 3.03 (Vernon Supp. 1980), the same conclusion follows. Appellant's construction would permit the remaining trustees to fill a vacancy on the board by appointing a person who is a complete stranger to the voters of the district at the time of his appointment, and thus defeat the purpose of both the 1973 amendment and the general residence requirement of the Election Code. Such a result would be contrary to the presumption that a reasonable result was intended. Article 5429b–2, § 3.02.

Appellant relies also on section 23.023(d) of the Texas Education Code (Vernon Supp. 1980), which provides:

> Except as provided for the initial election, under single–member districts, a candidate seeking to represent a trustee district must reside in the district he seeks to represent

> .　　.　　.　　.　　.

We conclude that this provision, which was enacted in 1979, adds nothing to article 2783d as amended in 1973. It merely re-

states and codifies the provisions of the earlier statute. Consequently, the negative implication which appellant draws from it has no greater force than the same implication he draws from article 2783d.

Appellant relies on *Luna v. Blanton*, 478 S.W.2d 76, 79 (Tex.1972) as supporting his contention that article 2783d prescribes qualifications in conflict with the six-months' residence requirement of the Election Code. That case was not based on a negative implication, since the conflicting provision was a constitutional requirement that a candidate for senator should have been a resident of the district for the year preceding his election. Obviously, the express provision of a different requirement was a conflicting provision to which article 1.05 of the Election Code was not applicable because of the express exclusion in subdivision 2 of that article.

Appellant also relies on *Schrock v. Hylton*, 133 S.W.2d 175, 180 (Tex.Civ.App.–Dallas 1939, no writ), in which this court held that the six–months' residence requirement of former article 2927 was not applicable to an election controlled by the special statute governing fresh water supply districts. As we read the opinion, it is not based on any supposed conflict with the requirements of article 2927, but rather on the ground that the general election statutes had no application because the special statute governing fresh water supply districts was exclusive. Since no similar contention is presented here, *Schrock* does not control our present question.

■ Appellant also contends that article 1.05 of the Election Code does not require a trustee to be a resident of a particular trustee district, but only of the school district as a whole, because, unlike the district as a whole, a trustee district is not a "political subdivision" within the meaning of article 1.05. He points out that subdivision 1 of article 1.05 requires six months' residence "in the district, county, precinct, municipality or other political subdivision for which the office is to be filled," and argues that "political subdivision" means a city, county, school district, or other political unit having powers to take independent action.

We find no merit in this contention. The precinct from which a county commissioner is elected and the district from which a legislator is elected have no powers to act independently, but they are, nevertheless, indisputably "political subdivisions" for the purpose of elections, according to the ordinary meaning of those words, whatever the same words may mean in other contexts. Moreover, this phrase was not found in former article 2927, but was introduced by the Election Code in 1951. A comment by counsel for the Election Code Commission, which appears following article 1.05 in Tex. Rev.Civ.Stat.Ann. (Vernon 1967) states: "No change in the law was contemplated here." We note that the word "district" was added, as well as "political subdivision." The additional language was evidently added to avoid any implication that the residence requirement would be given a restricted interpretation, rather than to restrict the scope of former article 2927.

For the reasons stated, we conclude that the trial court was correct in holding that the six–months' residence requirement of article 1.05 of the Election Code applies to appointments to fill vacancies in the board of trustees of an independent school district under article 2783d.

Affirmed.