

# The Attorney General of Texas

JIM MATTOX
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

J01 Texas, Suite 700
Houston, TX. 77002-3111
713/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

November 14, 1984

Honorable Ray Farabee
Chairman
State Affairs Committee
Texas State Senate
P. O. Box 12068, Capitol Station
Austin, Texas 78711

Opinion No. JM-231

Re: Whether an employee resident
of a state school is a legal
resident of the surrounding
independent school district

Dear Senator Farabee:

You have informed us that an employee residing on the campus of a
state school seeks election to the board of trustees of the indepen-
dent school district in which the state school is located. The state
school is a state correctional facility for delinquent children
administered by the Texas Youth Commission pursuant to chapter 61 of
the Human Resources Code. The state school is not an independent
school district having geographical boundaries; it is a state-created
and state-administered facility having no elected board of trustees.
All employee residents of the state school are employees of the state
of Texas. The geographical boundaries of the independent school
district completely enclose the state school. The employee in
question has resided on the campus of the state school for more than
six months, has voted in previous independent school district
elections, and has children attending the independent school
district's schools.

You ask us the following questions:

1. Under the facts as outlined above, does the
applicant for a place on the district ballot meet
the residency requirements of article 1.05 of the
Election Code for a 'district or political sub-
division,' so that he may appear on the ballot as
a candidate for the board of trustees of the
independent school district?

2. If the applicant does not satisfy the
requirements of article 1.05 of the Election Code,
is he still qualified to vote in the elections of
the independent school district pursuant to
article VI, section 2 of the Texas Constitution?

3. If the applicant is not permitted to be a
candidate or to vote in the independent school

> district elections by virtue of his status as a state employee residing on the campus of a state facility, does this prohibition constitute a denial of equal protection or a deprivation of liberty under the Fourteenth Amendment of the United States Constitution?

We conclude, first, that the state employee applicant does meet the residency requirement of article 1.05 of the Election Code, and that his name may appear on the ballot as a candidate for a position on the board of trustees of the independent school district. A state employee cannot conclusively be presumed to be a nonresident of a political subdivision by virtue of his status as a state employee residing in a state enclave.

Article 1.05, V.T.C.S., of the Election Code provides in part as follows:

> Subdivision 1. No person shall be eligible to be a candidate for, or to be elected or appointed to, any public elective office in this state unless he is a citizen of the United States eligible to hold such office under the Constitution and laws of this state . . . and unless he will have resided in this state for a period of 12 months next preceding the applicable date specified below, and <u>for any public office which is less than statewide, shall have resided for six months next preceding such date in the</u> district, county, precinct, municipality, or other political subdivision for which the office is to be filled. (Emphasis added).

The residency requirement for any candidate for any public elective office in Texas is 12 months in the state preceding the last day his name may be placed on the ballot and 6 months in the state preceding such date in the district or political subdivision. The Court of Civil Appeals has held that a school district was a "district or political subdivision" within the meaning of article 1.05 of the Election Code. See Brown v. Patterson, 609 S.W.2d 287 (Tex. Civ. App. - Dallas 1980, no writ). You indicate that the applicant, as an employee of the state, has resided on the campus of the state school for more than six months.

What constitutes "residence" is defined in article 5.08.(a) of the Election Code: "domicile; i.e., one's home and fixed place of habitation to which he intends to return after any temporary absence." The Election Code does not define "residence" for the purpose of running for public office, but the term has been construed to mean the same for the purposes of voting as for the purposes of running for political office. Cf. Prince v. Inman, 280 S.W.2d 779 (Tex. Civ. App.

- Beaumont 1955, no writ). For the purpose of voting, article 5.08.(1) states that

> [t]he residence of one who is an officer or employee of the government of this state or of the United States shall be construed to be where his home was before . . . unless he has become a bona fide resident of the place where he is in government service. . . .

Determining the question of residency is a question of intent and factual circumstances. It is not within the authority of this office nor within the discretion of the official receiving the application to determine those factual questions. See Parker v. Brown, 425 S.W.2d 379, 381 (Tex. Civ. App. - Tyler 1968, no writ) (question of residence is to be judicially determined); see also Mills v. Bartlett, 377 S.W.2d 636, 637 (Tex. 1964) (residence is determined by factual circumstances).

In any event, article 5.08 when read with article 1.05 cannot operate to disenfranchise a state employee who lives within the geographical boundaries of the independent school district merely because his place of residence is located on a public enclave. The right to vote and to run for a political office are basic fundamental rights guaranteed by the First Amendment to the United States Constitution. Dunn v. Blumstein, 405 U.S. 330 (1972); Evans v. Cornman, 398 U.S. 419 (1970); Carrington v. Rash, 380 U.S. 89 (1965). Any statutory provisions which restrict the right to hold public office should be construed strictly against ineligibility. See Chapa v. Whittle, 536 S.W.2d 681, 683 (Tex. Civ. App. - Corpus Christi 1976, no writ).

The factual situation as presented is governed by the principles of Carrington v. Rash, supra, and Evans v. Cornman, supra. In Carrington, the United States Supreme Court held that article VI, section 2 of the Texas Constitution was violative of the equal protection clause of the Fourteenth Amendment because the provision established a conclusive presumption against servicemen from acquiring residency for voting purposes. However, the Court did conclude that "Texas ha[d] a right to require that all military personnel enrolled to vote be bona fide residents of the community." 380 U.S. at 93-94. At that time the state of Texas provided no means by which a soldier could establish a bona fide residency in the county where he was stationed.

Similarly, in Evans v. Cornman, 398 U.S. 419 (1970), the United States Supreme Court considered the issue of whether persons living on a federal enclave could acquire residency for voting purposes. In Evans, id., the Permanent Board of Registry of Montgomery County, Maryland, ruled that persons living on the grounds of the National Institutes of Health [hereinafter NIH], a federal enclave located

within the geographical boundaries of the state, did not meet the residency requirement of the Maryland Constitution. Accordingly, NIH residents were denied the right to vote in Maryland elections. The Court in striking down the provision of the Maryland Constitution as violative of the equal protection clause of the Fourteenth Amendment to the United States Constitution, held that the state could assert no overriding interest to restrict the right to NIH enclave residents; and, that NIH residents were residents of Maryland and were "just as interested in and connected with electorial decisions . . . as [are] their neighbors who lived off the enclave." Id. at 426.

We conclude that Carrington and Evans prohibit election officials from applying article 1.05 to circumscribe the right of a state employee to acquire residency to run for public office by virtue of the fact that he resides on a state enclave, particularly, as here, when the state enclave is located within the geographical boundaries of the political subdivision in which he seeks office. The purpose of article 1.05 is to provide better representation by assuring that the voter will be better acquainted with the qualifications and views of the candidate and the candidate will be acquainted with and responsive to the needs and desires of the voter. See Brown v. Patterson, supra. By construing article 1.05 in favor of the residency of the applicant, the statutory purpose will not be frustrated.

Since your second and third questions are predicated on a negative answer to your first question, it is not necessary to address them.

### SUMMARY

Article 1.05 of the Election Code does not bar a state employee from establishing residency within an independent school district by virtue of the fact that he resides on a state facility located within the geographic boundaries of the independent school district. The applicant, having met the residency requirement may obtain a place on the ballot for the position of trustee of the independent school district.

Very truly yours,

JIM MATTOX
Attorney General of Texas

TOM GREEN
First Assistant Attorney General

DAVID R. RICHARDS
Executive Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Tony Guillory
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Rick Gilpin, Chairman
Colin Carl
Susan Garrison
Tony Guillory
Jim Moellinger
Jennifer Riggs
Nancy Sutton
Bruce Youngblood