

# The Attorney General of Texas

January 10, 1985

JIM MATTOX
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1 Texas, Suite 700
Houston, TX. 77002-3111
713/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Mr. Charles E. Nemir
Executive Director
Texas Department of Water Resources
P. O. Box 13087, Capitol Station
Austin, Texas   78711

Opinion No. JM-296

Re:   Whether a developer of property within a water control and improvement district may serve as director of that district

Dear Mr. Nemir:

You have asked our opinion as to whether two developers of property within the territorial boundaries of Brushy Creek Water Control and Improvement District No. 1 [hereinafter "District"] are disqualified by the Texas Water Code from serving on the board of directors of the District.   Your letter states:

> Either section 50.026 or section 51.0721 of the Texas Water Code, or possibly both of these sections, is applicable to Brushy Creek Water Control and Improvement District No. 1, depending on whether it is a special law district or a general law district.  Both sections provide that a developer of property in a district is disqualified from serving as a member of the governing board thereof if the District is proposing to provide or actually providing water and sewer services or either of these services to household users as the principal functions of the District.

> The District has never provided sewer services to household users as a principal function of the District.  However, the District has recently filed an application with the Texas Department of Water Resources to have the District designated as the entity to provide the wastewater collection, treatment, and/or disposal system or systems to serve all or part of a defined area, as authorized by chapter 26, subchapter C, of the Texas Water Code.  If the District is so designated and constructs a regional sewage disposal facility, it

> proposes to provide capacity in that facility to various political subdivisions, including municipalities and municipal utility districts, but does not propose at this time to provide sewer services directly to household users. The customer political subdivisions would, however, provide sewer services to household users within the territorial confines of the District.

We limit our conclusion to the specific facts presented. There are no reported cases construing section 50.026 or section 51.0721 of the Texas Water Code. Therefore, the rules of statutory construction must be applied in order to interpret the statutes. Calvert v. British-American Oil Producing Co., 397 S.W.2d 839, 842 (Tex. 1966). The fundamental rule in the construction of statutes is to ascertain and give effect to the intent of the legislature. Jessen Associates, Inc. v. Bullock, 531 S.W.2d 593, 599 (Tex. 1975). Courts will construe the language of a statute liberally in order to give effect to the legislative intent. City of San Marcos v. Lower Colorado River Authority, 508 S.W.2d 403 (Tex. Civ. App. - Austin 1974), aff'd 523 S.W.2d 641 (Tex. 1975).

The Code Construction Act, article 5429b-2, V.T.C.S., sets out in section 3.01 several presumptions of legislative intent applicable here: "(3) a just and reasonable result is intended; (4) a result feasible of execution is intended; and (5) public interest is favored over any private interest." The Code Construction Act further provides in section 3.03, subsections (1) and (5), that in construing a statute a court may consider, among other matters, the object sought to be attained by the statute and the consequences of a particular construction. These principles of construction require that the legislative purposes be determined from the statute as a whole rather than from a literal application of particular statutory language. Brown v. Patterson, 609 S.W.2d 287 (Tex. Civ. App. - Dallas 1980, no writ).

In 1973, the legislature amended the Texas Water Code to add four statutes (sections 50.024 [current section 50.026], 51.0721, 53.0631, 54.1021) which provide for disqualification, in particular situations, of the board members of certain types of water districts: special law districts, general law districts, fresh water supply districts, and municipal utility districts. Acts 1973, 63rd Leg., ch. 635, at 1748, amended by Acts 1975, 64th Leg., ch. 248, at 600. With the exception of section 53.0631, pertaining to fresh water supply districts, these disqualification statutes are virtually identical. Therefore, whether section 50.026 or section 51.0721 is applicable to the District is immaterial to our result.

Sections 50.026 and 51.0721, the statutes applicable to the District, provide, in pertinent part:

> (a) A person is disqualified from serving as a member of a governing board of a district proposing to provide or actually providing water and sewer services or either of these services to household users as the principal functions of the district and created by special act of the legislature if:
>
> . . . .
>
> (3) he is a developer of property in the district;
>
> . . . .

Water Code §50.026.

> (a) A person is disqualified from serving as a member of the board of a district proposing to provide or actually providing water and sewer services or either of these services to household users as the principal functions of the district, if:
>
> . . . .
>
> (3) he is a developer of property in the district;
>
> . . . .

Water Code §51.0721.

The disqualification statutes were part of a fourteen-bill package of remedial legislation involving water districts submitted as emergency legislation by then Governor Dolph Briscoe with these words:

> The most numerous category of special districts, apart from school districts, are water districts. They have been referred to as 'the least known, least understood, and least cared about class of governments in the United States.' They desperately need increased supervision and regulation over their formation and the conduct of their financial affairs. The abuses to which they have been subject are designed to be corrected by

> these bills.  Enactment of these bills will help
> maintain the confidence of our citizens in their
> local government.

S.J. of Tex., 63rd Leg., Reg. Sess. 421 (1973); H.J. of Tex., 63rd
Leg., Reg. Sess. 1285 (1973).

Disqualification statutes are significantly different from
statutes designed to prevent or punish specific acts of misconduct.
The 1973 statutes are intended to preclude conflicts of interest
between developers and the board of directors of a district providing
water or sewer services to residents by disqualifying the developers
from serving on the board of directors.  The disqualification statutes
also serve to maintain the public's trust and confidence in the board
of directors and in their decisions.

The statutory provisions relating to defined regional sewage
systems are contained in chapter 26, subchapter C, of the Texas Water
Code.  Water Code §§26.081-26.087.  The purpose of such regional
systems is

> to serve the waste disposal systems needs of the
> citizens of the state and to prevent pollution and
> maintain and enhance the quality of water in the
> state.

Water Code §26.081(a).  After the Texas Water Development Board has
defined the regional area, it then designates "the person to provide
the waste collection, treatment, or disposal system or systems to
serve all or part of the area defined."  Water Code §26.083(c).

The District, a designated regional entity, will construct and
operate or oversee a regional waste treatment facility.  This facility
will treat sewage from households within the defined area, including
households within the territorial boundaries of the District, after
the sewage is collected by municipalities and other water districts.
Your letter states that Brushy Creek Water Control and Improvement
District No. 1 does not propose at this time to provide sewer service
directly to household users.  The implication of your statements is
that the sewer service to be provided by the District would be made
available to political subdivisions within the regional area and only
indirectly to household users.  We conclude that the prohibition from
serving on the governing board of a district providing water or sewer
service found in sections 50.026 and 50.0721 of the Water Code applies
whether the service to household users is supplied directly by the
district or indirectly through intermediary governmental entities.

The question of whether sections 50.026 and 51.0721 can validly
be extended to bar membership on a district's board of directors to

persons who supply water and sewer services only <u>indirectly</u> to household users is a novel one. As we indicated earlier, there are no reported cases construing these statutes, and our research has found no other case which directly addresses this issue. We have turned, therefore, to case law construing statutes and other provisions of law prohibiting, as a conflict of interest, certain conduct by officers or employees of municipalities, and used as a basis to invalidate contracts entered into by the city when a conflict of interest was found to exist.

Thus, in <u>Delta Electric Construction Company v. City of San Antonio</u>, 437 S.W.2d 602 (Tex. Civ. App. - San Antonio 1969, writ ref'd n.r.e.), the president and a major shareholder of a contracting firm was a member of the city's Electrical Examining and Supervising Board. The city, through its Water Works Board of Trustees, executed a contract with the firm. In affirming the trial court's judgment that the contract was null and void, the court of civil appeals found it immaterial that the firm president/electric board member did not in any manner influence the award of the contract to his firm. <u>Id.</u> at 604, 609. Instead, the court interpreted the scope of the prohibited conflict of interest very broadly:

> 'It is the general rule that municipal contracts in which officers or employees of the city have a personal pecuniary interest are void. . . . [Citations omitted]. It has long been the public policy of this state to prohibit officers of a city from having a personal pecuniary interest in contracts with the city and this policy is specifically expressed in both the penal and civil statutes. <u>See</u> article 373, Penal Code, and article 988, R.C.S. 1925. The foregoing rule rests on sound public policy. Its object is to insure to the city strict fidelity upon the part of those who represent it and manage its affairs. The rule prohibiting public officers from being interested in public contracts should be <u>scrupulously enforced</u>.' (Emphasis added).

<u>Id.</u> at 609 (quoting from <u>City of Edinburg v. Ellis</u>, 59 S.W.2d 99 (Tex. Comm'n App. 1933, opinion approved)).

> '[I]t is generally held that whenever a public officer enters into a contract, the execution of which <u>may make it possible for his personal interests to become antagonistic to his faithful discharge of a public duty</u>, such contract will be held void as against public policy. It is the existence of such interest which is decisive and

not the actual effect or influence, if any[,] of
the interest:  if there is a potential conflict,
the  contract  is  invalid.'   (Citation  omitted).
(Emphasis supplied).

Id.   Accord,  International  Bank  of  Commerce  of  Laredo  v.  United
National  Bank  of  Laredo,  653  S.W.2d  539,  547-48  (Tex.  App.  -  San
Antonio 1983, writ ref'd n.r.e.).

This ruling by the Delta Electric court indicates that it is the
public policy of this state to construe the prohibition against a
conflict of interest broadly enough both to include the indirect use
of official influence to further one's private pecuniary interest and
to include the mere possibility that such influence might be used.
This conclusion follows from the fact that the Delta Electric court
found that the firm president/electric board member was involved in a
conflict of interest, even though he did not serve on the city board
through which the contract was awarded and even though he exercised no
influence on its award.  This situation is analogous to the facts
which we confront in this opinion, because developers of property
serving on water district boards, though not providing services
directly to household users, would be identified closely with the
political entities formally providing these services and would thus
have the possibility of influencing the provision of these services to
their personal pecuniary benefit.  In these circumstances, therefore,
we find that it is proper to apply this broad public policy against
conflicts of interest and to include developers serving on such
district boards within the ambit of sections 50.026 and 51.0721.

If the District is designated as a regional entity, conflicts of
interest, which the legislature sought to proscribe by section 50.026
and section 51.0721, could thus exist for developers of property in
the District who serve on the board of directors of the District.  The
board of directors can potentially affect land values substantially
within the District by making decisions which might influence the rate
and direction of growth within the District and which might be
improperly influenced if there were a conflict of interest between a
person's duty as a board member and his or her pecuniary interest as a
developer.  For instance, the board will determine the number and
location of all treatment and disposal facilities, which will affect
land values and could determine the order in which portions of the
defined area would be served.  The board can oppose or support
applications by others for waste treatment facilities within the
defined area.  The board can also request the Texas Water Commission
to issue an order under section 26.084 of the Water Code which would
prohibit or limit other treatment facilities within the defined area.

Section 50.026 and section 51.0721 also require, however, that
the providing of water or sewer services to household users be the

"principal functions" of the district. We find the facts in the request insufficient to determine whether the sewer services, which the District will provide as a regional entity, will be the principal function of the District.

The District was created as a conservation and reclamation district which was subsequently "validated" by the legislature and given the status and authority of a water control and improvement district. Acts 1957, 55th Leg., ch. 341, at 807. Your request does not set out the nature and scope of what other functions, if any, the District will have beyond its functions as a regional entity that are pertinent to determining whether a conflict of interest exists. While the District's functions as a regional entity concerned with water and sewer services will undoubtedly involve a substantial commitment of time and financial resources, it cannot be determined from the facts given whether these particular functions will be the principal functions of the District.

In conclusion, the District, if designated as an entity for the operation or oversight of a regional waste treatment system, would be providing or proposing to provide sewer services to household users within the meaning of sections 50.026 and 51.0721. The two developers of property within the District would thereby be disqualified from serving on the District's board of directors if those sewer services were the principal function of the District. Under the facts set out in the opinion request, we are unable to determine whether such services would be the principal function of the District.

## S U M M A R Y

Any developer of property within the boundaries of the Brushy Creek Water Control and Improvement District No. 1 is disqualified from serving on the District's board of directors if and when the District is designated as the entity to operate or oversee a regional waste treatment system if the District's functions as a regional entity are its principal functions.

Very truly yours,

JIM MATTOX
Attorney General of Texas

TOM GREEN
First Assistant Attorney General

DAVID R. RICHARDS
Executive Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Paul Elliott
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Paul Elliott
Susan Garrison
Tony Guillory
Jim Matthews
Nancy Sutton

1.   The Delta Electric court relied on two statutes in reaching its judgment, one of which, article 988, V.T.C.S., prohibited a city officer from being "directly or indirectly interested" in the business affairs of the city.  Thus it is arguable that because that statute contained the words "directly or indirectly," and neither section 50.026 nor section 51.0721 does, the Delta Electric decision is inappropriate here.  Delta Electric, supra, at 608-09 & nn. 3, 4, 5.  We decline to accept this position, however, on two grounds:

(1)  Article 988 was repealed by the legislature and replaced with article 988b, V.T.C.S.  Acts 1983, 68th Leg., ch. 640, at 4079.  The new conflict-of-interest statute for local officials, article 988b, is far more comprehensive than its predecessor but does not contain the words "directly or indirectly."  We doubt that by the omission of these words the legislature meant to restrict the broad scope of conflict-of-interest prohibitions applied under article 988.  Thus, the Delta Electric statement of policy should retain viability and should be applicable to other statutes, such as sections 50.026 and 51.0721, which do not contain these words.

(2)  The Delta Electric court also relied on article 373 of the Texas Penal Code which has since been repealed.  Acts 1973, 63rd Leg., ch. 399, at 991.  That statute did not contain the words "directly or indirectly" and thus was a basis on which the court could have bottomed its opinion without relying on express statutory language sweeping indirect conduct within the scope of the prohibition.  (A city charter provision cited by the court also contained the term "directly or indirectly," but the court appeared not to base its decision exclusively on this provision.)  Id. at 609.