225 A.2d 52.

DANCLIFF REALTY CORPORATION *vs.* JOHN W. MILLER *et al.*

DECEMBER 14, 1966.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

KELLEHER, J. This is a civil action brought against the three individual defendants in their capacities as members of the beach commssion of the town of Narragansett and the town itself wherein specific performance is sought of an option purportedly given the plaintiff for a ninety-nine-year lease of certain beach land owned by the town and upon which the plaintiff was to erect a series of buildings which would house a motel, restaurant and other facilities. From a judgment entered in behalf of the defendants denying and dismissing this action, the plaintiff has appealed to us.

While this action was originally commenced by a bill in equity in the superior court and was heard by the court under its former rules of civil procedure, the decision of the trial justice and the judgment entered thereon were issued after the court's new rules of civil procedure became effective on January 10, 1966. Accordingly we have adopted herein the terminology of the new rules. The complainant is referred to as the plaintiff, the respondents as the defendants, and the bill in equity is described as a civil action.

The sole issue determinative of this case is whether the beach commission of the town of Narragansett had the authority to lease to plaintiff the land owned by the town and acquired by it for beach and bathhouse purposes. If our holding is negative, it follows that the commission could not permit the plaintiff to exercise the purported option which is the basis for this action.

While the delineation of authority of the commission in these premises presents us with a question of law exclusively, a brief review of the record will prove helpful.

Following the disastrous hurricane of September 1938,

which wreaked special havoc on shore communities of Rhode Island such as Narragansett, a major rehabilitation program was begun by way of legislative action in the general assembly. By the enactment of chap. 764 of P. L. 1939, the town of Narragansett was authorized to acquire certain property bordering on the Atlantic Ocean which had been severely damaged in the September disaster. We have set forth herein the following pertinent provisions of the act which are indicative of the powers given the beach commission:

"Section 1. The town of Narragansett, through the commission * * *, is hereby authorized and empowered to carry on a general beach and bathhouse business at said town; to purchase, acquire, own and manage lands within said town, and purchase, construct, maintain and operate or lease thereon buildings, piers, walks, parking facilities and swimming pools; to furnish bathing accommodations and facilities to the public; and to make reasonable rules and regulations for the use of the same, and charge suitable fees therefor.

"Sec. 2. Said town is hereby authorized and empowered to take for the aforesaid purposes the lands or any part or parts thereof situated in said town and located within the area bounded and described as follows: [Description of land follows.]
"* * *

"Sec. 6. The management of Pettaquamscutt Park and the lands acquired, and the purchase, construction, maintenance and operation of buildings, piers. parking facilities, walks and swimming pools, on behalf of said town under the provisions of this act, and the general conduct of the beach and bathhouse business of said town authorized by the aforegoing provisions, shall be vested in a beach commission consisting of three qualified electors of said town * * *.

"Sec. 8. * * * Said commission may charge suitable and reasonable fees for admission to any part of said beach owned by said town, provided, however, that it may exempt inhabitants of said town from the pay-

ment of admission fees to the beach only; and said commission shall charge reasonable and suitable fees for admission to and use of bathhouses, swimming pools, lockers, and other bathing accommodations, parking space and facilities so furnished by said town to the end that said project contemplated by this act will be self liquidating and reasonably profitable to said town considering its investment and the expenses of operation incidental to the same. Said commission shall have power to make reasonable rules and regulations as it may deem necessary or proper for the proper care, management, maintenance, protection and improvement of any part of said beach owned by said town and of any buildings, fences, walks, piers, parking areas and other property which may be thereon from time to time, and for the use and enjoyment of the same and the maintenance of good order and sanitary conditions thereon, and for regulating any and all travel by the public to, from, on or over any part of said beach owned by said town or over the highways or other public ways adjacent or leading thereto."

The act further provided that it be approved by the qualified electors at a financial town meeting. The qualified electors of the town assembled together and after adopting the provisions of the act proceeded to elect three of their number as members of the beach commission. Each commissioner serves a term of three years with each term being staggered so that there occurs one vacancy on the commission each year. Each commissioner is elected by the qualified electors attending the annual financial town meeting. The act also authorized the town to issue bonds in an amount not to exceed $300,000 to cover the costs of effectuating the purposes of this legislation.

It is undisputed that after its acceptance by the town in 1939 a bathing pavilion was erected on a portion of the land acquired under its provisions. In 1954, however, Rhode Island was struck by another hurricane and the bathing facilities erected at this location were destroyed. The par-

cel of land upon which plaintiff plans to erect its commercial enterprise is the site of the former town bathing pavilion. It is presently vacant land.

On or about November 21, 1961, a majority of the beach commission, in consideration of $450 paid it by plaintiff, granted plaintiff an option to lease a certain portion of the land acquired by the town under the 1939 act for a period of ninety-nine years. The option was for a period of 18 months and attached to it was a form of the proposed lease. The lease called for plaintiff to erect on this land a series of buildings containing a motel, restaurant and other facilities. At the expiration of the lease, title to the buildings would revert to the town. The annual rental was $3,000 payable quarterly. Included in the lease were the usual covenants found in instruments of this type. Among the unusual covenants found in this lease is one which called for the lessor to aid the lessee's attempts to obtain a construction mortgage by which the erection of this facility was to be financed together with a provision which stated that in the event of default on the mortgage by the lessee-mortgagor, the mortgagee could operate the establishment.

While the parties here have presented all facets of this matter for our consideration citing various cases and propositions of law in support of their respective contentions, we believe that the answer as to whether the beach commission has the authority to lease the town property is to be found within the provisions of chap. 764. It is our opinion, after a careful analysis of this statute, that the commission has no authority to lease the land acquired by the town under the 1939 act.

Here the trial justice has held, and correctly so, that the town of Narragansett in the operation of the beach property was exercising one of its proprietary functions. While in *Buckout* v. *City of Newport,* 68 R. I. 280, this court stated that a municipality, if operating in a proprietary

capacity, is clothed with the same full measure of authority over its property as a private corporation or an individual, we pointed out that this authority can be restricted by charter or general law. This statement manifests a recognition that while exercising a proprietary function, a municipality's right to alienate its property is subject to regulation and control. The legislation setting forth the beach commission's authority is clear and explicit and admits of no interpretation favorable to plaintiff's position in this case.

Nowhere in the 1939 act can we find any authority which would permit the commission to lease any of the land acquired by the town for beach and bathhouse purposes. Section 1 provides that the commission may "purchase, acquire, own and manage lands within said town, and purchase, construct, maintain and operate *or lease thereon* buildings, piers, walks, parking facilities and swimming pools * * *." (italics ours) It is obvious from a reading of the foregoing that the commission's powers insofar as the beach land is concerned is as a repository only. It has no authority to transfer or convey any title or right to possession in and to said land. Where the word "lease" is employed in the act, it is used with reference to buildings, piers, walks, parking facilities and swimming pools and is followed immediately by the word "thereon." This particular language, in our opinion, is concrete evidence that the general assembly and the qualified electors of the town of Narragansett were insuring that the property which was acquired pursuant to chap. 764 was to be devoted to the public purposes of the act. This property was effected with a public interest to be administered and supervised by the beach commission solely for those purposes.

To hold that the beach commission had the authority to execute the proposed lease would have the commission a victim of a constitutional pitfall pointed out in *Opinion to*

*the Governor,* 76 R. I. 365, 371. There the powers of a development authority created for the city of Newport were under consideration. The proposed legislation gave the authority power to construct, operate and *lease* a marina. It was pointed out that this leasing provision ran afoul of the constitutional mandate that private property be condemned solely for public purposes. While it was held to be constitutionally permissible for the development authority alone to operate the marina, the justices did not approve a leasing arrangement whereby the operation of the marina would be taken over by private individuals. Such a transfer it was said would convert the proposed facility into a private enterprise and remove the element of primary public use or purpose which was essential to its validity. We believe that the drafters of the legislation in the case before us anticipated the objection present in the Newport legislation and took precise pains to insure that the control of the Narragansett beach remain vested in its commission. Cognizant of this defect the legislature in 1939 gave no such authority to the commission as plaintiff now contends it possesses. To adopt plaintiff's position would permit the expenditure of public money and the exercise of eminent domain to acquire private property ostensibly for a public purpose but actually for private profit in the operation of the plaintiff's proposed endeavor. This we cannot do.

The powers of the commission are either those expressed, implied or necessary to the accomplishment of the declared objects and purposes as set forth in chap. 764. 62 C.J.S. Municipal Corporations §117, p. 255. While we are concerned here with the proprietary powers of a municipal corporation which in certain cases are given a more liberal interpretation than a municipality's governmental powers, any doubt as to the existence of these powers must be resolved against them. *Town of McIntyre* v. *Baldwin,* 61 Ga. App. 489, 492.

While the municipality, in this case acting through the beach commission, may fully exercise its express powers, any authority to lease the town land must be implied. We cannot, however, give power by implication which will be contrary to the express grant. 62 C.J.S. Municipal Corporations §117. Here there is no authority either expressly or impliedly to lease the land. In addition we cannot find that the existence of this power is essential to the commission's ability to properly and effectively conduct the operations for which it was created.

By the adoption of chap. 764 it was intended to vest control and management of the Narragansett beach and bathhouse facilities in the beach commission. These duties cannot be delegated. Adoption of the lease is not only unwarranted under the act, but its execution would constitute a complete abdication of the commission's responsibilities given it under the law. To prohibit this the framers of the legislation under consideration, by the express language used, not only insured that title or possession of any land acquired under this act would remain in the town and not in the commission, but also that the requisite control over the beach property would and should remain in the commission.

Where the word "lease" appears, it is used in connection with structures or facilities only and it is followed by the adverb "thereon." This terminology is indicative, we believe, of the intent of this legislation that the land involved be devoted for the public purposes of the act and none other.

The plaintiff, in urging that the commission has by implication the power to lease land, points out that the commission by the terms of the statute can lease parking facilities and they being, in many cases, just land alone, it argues that the commission therefore can lease land for the purposes set forth in the proposed lease. The plaintiff is fault-

ed in this position because not only can we find parking facilities which consist of substantial structures but it also neglects to observe that where the word "lease" appears in the statute it is modified by the word "thereon."

It is our belief that the phraseology of this statute wherein the term "lease" applies evidences an intention by the general assembly and the qualified electors of the town of Narragansett to allow the commission to grant licenses to the appropriate individuals for a concession to render certain services incidental to an enjoyable day at the beach, not the least important of which in this day of the automobile is a space to park one's automobile. See *Bailey* v. *City of Topeka,* 97 Kan. 327, and *Lordi* v. *County of Nassau,* 246 N.Y.S.2d 502.

We hold, therefore, as did the court below, that the Narragansett beach commission has no authority to lease the land acquired by the town pursuant to the provisions of chap. 764 of P. L. 1939. Having no authority to lease the land, it follows that it had no authority to grant the option it did to the plaintiff.

The plaintiff's appeal is denied and dismissed, the judgment appealed from is affirmed, and the case is remitted to the superior court for further proceedings.

*Gunning & LaFazia, Bruce M. Selya, Zeitz, Sonkin & Radin, James Radin,* for plaintiff.

*James O. Watts, John T. Walsh,* for defendants.