

# The Attorney General of Texas

December 18, 1985

JIM MATTOX
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1001 Texas, Suite 700
Houston, TX. 77002-3111
713/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Mr. Vernon M. Arrell
Commissioner
Texas Rehabilitation Commission
118 East Riverside Drive
Austin, Texas  78704

Opinion No.  JM-391

Re:  Disposition of income from Rehabilitation Commission vending machines and pay telephones

Dear Mr. Arrell:

You have asked whether the Board of the Texas Rehabilitation Commission, acting as the board of trustees of an "Employee Fund" established for the benefit of commission employees, may direct that income from vending machines and pay telephones be used to buy flowers either for hospitalized employees or for the funerals of employees and their family members, or be used for other purposes benefiting commission employees generally. You also ask whether these monies must be deposited in the state treasury pursuant to the State Funds Reform Act of 1981, now chapter 4 of the Treasury Act, article 4393-1, V.T.C.S. See Acts 1985, 69th Leg., ch. 240, at 2078, 2103.

In order to answer your questions, it is unnecessary to discuss at length by what authority vending machines, pay telephones, and other coin-operated devices may be installed in buildings occupied by state agencies, because the commissions therefrom may not be placed in an "Employee Fund" such as you describe in any event; they must be deposited in the state treasury unless they are paid to a vocationally handicapped vendor/operator.

If a "vending facility," as defined by section 94.001(2), of the Human Resources Code, has been established in a state-controlled building by either the Commission for the Blind or the Rehabilitation Commission pursuant to sections 94.002, 94.003 and 94.007 [see, e.g., V.T.C.S. art. 8801 (coin-operated service, music, skill and pleasure machines)], the vocationally handicapped person operating the facility is entitled to the commissions from competing vending machines installed in the building; but if the Commission for the Blind and the Rehabilitation Commission have decided not to locate such a "vending facility," in a building, the agency issued a general permit to arrange for vending facilities is to determine the "assignment of the commissions from vending machines installed in the building." Hum. Res. Code §94.010(c).

Even if the Rehabilitation Commission could be considered an agency "granted a general permit" to arrange for vending facilities and determine the assignment of commissions from vending machines installed in its building pursuant to section 94.010 [a question we do not address], we do not believe it could validly "assign" them to a fund operated for the private benefit of Rehabilitation Commission employees. While machine commissions may be assigned to handicapped vendors as part of the consideration for their agreement to operate vending facilities on the premises, money paid to a state agency by a vending company or other firm as consideration for the placement of its machines on state property is money belonging to the state. It may not be used for private purposes. Texas Const. art. III, §51. In answer to your first question, we do not believe the use of public funds to purchase flowers as expressions of condolence could normally be considered a use for public purposes. Cf. Attorney General Opinion MW-36 (1979) (county prohibited from expending public funds for the purchase and mailing of Christmas cards).

Your second question involves chapter 4 of article 4393-1, V.T.C.S., the Treasury Act, which embodies the State Funds Reform Act. It requires that "fees, fines, penalties, taxes, charges, gifts, grants, donations, and other funds collected or received by a state agency under law" shall be deposited in the treasury, and credited to the general revenue fund "unless the money is expressly required to be deposited in another fund, trust fund or special account not in the General Revenue Fund." V.T.C.S. art. 4393-1, §4.004. (Emphasis added).

No law requires that the money collected by the Rehabilitation Commission as commissions from vending machines installed in its building be deposited in another fund, trust fund, or special fund, and it must be deposited in the general revenue fund of the state unless it is paid to a handicapped operator pursuant to chapter 94 of the Human Resources Code, or falls within one of the statutory exemptions set out in section 4.003. You suggest the commissions from vending machines located in the building occupied by the Rehabilitation Commission might be exempted as "trust funds."

Subsection (b)(2) of section 4.003 of article 4393-1 specifies that the chapter does not apply to "funds held in trust or escrow for the benefit of a person or entity other than a state agency." We think this provision would apply to the commissions collected from vending machines located in the building housing the Rehabilitation Commission if they were being collected for the account of a handicapped vendor/operator, but not when they are collected for the benefit of a Rehabilitation Commission employees fund. Cf. Attorney General Opinion MW-590 (1982) (physicians' fees at certain state hospitals not exempt from deposit in state treasury). Commissions collected for the benefit of handicapped vendors are earmarked funds

to which the vendors are already entitled as consideration for their services, and are not collected for the benefit of the state agency. In other cases, machine commissions will be collected for the benefit of a state agency, which controls their disposition. Hum. Res. Code §94.010. But see Hum. Res. Code §94.015(b).

Our attention has been drawn to Attorney General Opinions MW-363 (1981) and H-610 (1975), which involved a fund for the Windham Independent School District, a nongeographical school district operated by the Texas Department of Corrections for the benefit of its inmates, and similar Educational and Recreational Funds. The funds consisted of receipts from the operation of commissaries, prison-sponsored recreational shows and entertainment, and all gifts and other income for inmate welfare. Attorney General Opinion H-610 concluded that the funds held were trust funds, and Attorney General Opinion MW-363 concluded that they were "held in trust" within the meaning of the State Funds Reform Act.

It is unnecessary here to review or affirm all that was said in those opinions. It is sufficient to note that expenditures of money to advance the welfare of inmates by a state agency charged with their care is not an expenditure for private purposes; such expenditures serve a proper public purpose. Attorney General Opinions H-610 and MW-363 do not hold that public funds may be diverted to a fund for the private benefit of state employees. Cf. Hum. Res. Code §94.015(b); Attorney General Opinions MW-454 (1982) (certain Mental Health and Mental Retardation funds not subject to deposit in state treasury); JM-42 (1983) (independent school districts may deposit "activity funds" in credit union).

In sum, we are of the opinion that the income from neither vending machines, pay telephones, nor other coin-operated devices, may be directed by the board of trustees of the Rehabilitation Commission to be deposited in an "Employee Fund" to be used for the private benefit of Rehabilitation Commission employees. Like income from vending machines, income from pay telephones and other coin-operated devices placed on public property is public money. That the State Purchasing and General Services Commission, rather than the Commission for the Blind, may be responsible for authorizing the placement of pay telephones and other devices does not alter the public character of the income realized, nor the constitutional restrictions on its disposition.

Unless control has been specifically delegated to a different agency by law, or unless the State Purchasing and General Services Commission has delegated the authority to an occupying state agency, the State Purchasing and General Services Commission has charge and control of all public buildings, grounds, and property of the state. It is responsible for income derived from the private use of such

property that it may authorize.  V.T.C.S. art. 601b, §§4.01(a), 4.01(c), 4.15(a), 4.15(b).  Revenues it receives from leasing space to private tenants in state-owned buildings "to serve the needs of the employees and visitors in the buildings" are required by statute to be deposited to the credit of the general revenue fund and may be used only for "building and property services performed by the Commission." V.T.C.S. art. 601b, §4.15(i).  In our opinion the term "lease" in this statute was used in a broad sense that includes "licenses" and other lesser rights.  See Hancock v. Bradshaw, 350 S.W.2d 955 (Tex. Civ. App. - Amarillo 1961, no writ) (coin-operated machines).  See also Tips v. United States, 70 F.2d 525 (5th Cir. 1934) (federal "lease"); Kibbin v. McFaddin, 259 S.W. 232 (Tex. Civ. App. - Beaumont 1924, writ ref'd) (nontechnical use of term).  Cf. Doncliff Realty Corp. v. Miller, 225 A.2d 52 (R.I. 1964) (statute).

Thus, income from vending machines and pay telephones located in the building occupied by the Rehabilitation Commission -- because it is not expressly required by general law to be deposited in another fund, trust fund or special fund -- must be deposited in the general revenue fund of the state pursuant to the State Funds Reform Act. V.T.C.S. art. 4393-1.

We have not overlooked sections 36 and 37 of article V of the General Appropriations Act, which reads:

> Sec. 36.  VENDING MACHINES AUTHORIZED.  Except in those areas which are now served by vendors operating under supervision of the Blind Commission, vending machines may be placed on state-owned or leased property or in state-owned or leased buildings only with the approval of the governing boards or commissions and such approval shall be recorded in the minutes of the body.  A copy of the contract shall be filed with the State Purchasing and General Services Commission showing the location within the agency and the terms of the contract.  Proceeds, net revenues, rentals or commissions received shall be accounted for as state revenue and the amount so collected is hereby appropriated to the institution, board, commission or agency for use as directed by the board or commission authorizing the installation. The amount of such proceeds, net revenues, rentals or commissions and disposal of such funds shall be included in the annual report of the state agency as required elsewhere in this Act.  Vending machines located in areas or buildings now being serviced by vendors under the supervision of the Blind Commission must be operated under a joint

contract with the machine owners and the vendors operating under the supervision of the Blind Commission.

Sec. 37. PAY STATION TELEPHONES AUTHORIZED. Pay station telephones may be located in the capitol area only with the approval of the State Purchasing and General Services Commission and the net proceeds of such installations shall be collected and deposited to General Revenue Fund by the State Purchasing and General Services Commission. In other areas pay telephones may be located in state-owned or leased buildings or on state-owned land only with the approval of the governing board or commission and the net proceeds shall be collected and accounted for as state revenue and the amount so collected is hereby appropriated for use by the agency as determined by the governing board or commission. The amount of net proceeds and disposal of such funds shall be included in the annual report of the state agency as required elsewhere in this Act.

General Appropriations Act, Acts 1985, 69th Leg., art. V, §§36, 37, at 7782-83.

Riders to general appropriations acts cannot repeal, modify, amend or conflict with existing general law because such matters are foreign to the subject of "appropriations." Tex. Const. art. III, §35; Moore v. Sheppard, 192 S.W.2d 559 (Tex. 1946). Riders that could be interpreted as intending to do so will be construed, instead, to harmonize with existing law, if possible. See Attorney General Opinion JM-343 (1985). Authority for determining whether vending machines or other coin-operated devices will be installed on state-controlled property is vested by existing general law in the Commission for the Blind and the State Purchasing and General Services Commission, primarily. General law also "earmarks" machine income in some instances, i.e., directs its use for particular purposes.

Inasmuch as the Appropriations Act provisions cannot alter that authority or appropriate the income for different purposes, we construe the two provisions to mean, when they refer to "the board or commission authorizing the installation," either the Commission for the Blind [or the Rehabilitation Commission pursuant to section 94.003(b) of the Human Resources Code] or the State Purchasing and General Services Commission [or the agency to which charge and control of the property may have been given by statute or delegated pursuant to article 601b, §4.01(c), V.T.C.S.]. Cf. Hum. Res. Code §94.004. Such a construction does no violence to the language employed by the

legislature in the Appropriations Act riders and avoids the need to pronounce the passages violative of the constitution.  See Jessen Associates, Inc. v. Bullock, 531 S.W.2d 593 (Tex. 1975).

### S U M M A R Y

Income from vending machines dispensing certain products and services (not operated by handicapped vendors) and pay telephones located in the building occupied by the Texas Rehabilitation Commission must be deposited in the state treasury and may not be expended for the private benefit of Texas Rehabilitation Commission employees.

Very truly yours,

JIM   MATTOX
Attorney General of Texas

JACK HIGHTOWER
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

ROBERT GRAY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Bruce Youngblood
Assistant Attorney General