DECISION
The City of Providence and the Providence Redevelopment Agency ("PRA"), together with all of the defendants, move this Court to dismiss the within action. They claim that plaintiff Tidewater Realty, LLC's complaint, alleging tortious interference with a contract to purchase real estate, should be dismissed because the terms of the contract and the relevant statute, G.L. 1956 §37-7-3, explicitly recognize the City's right to prevent the contemplated performance of that contract. Tidewater suggests that the City waived any such right, and it further asserts that the City should not have used the PRA as an agent to conduct the transaction that ultimately resulted in the alleged tortious interference. Because the arguments of the parties and the evidence presented extend beyond the pleadings, the Court will, per force, treat the defendants' request as a motion for summary judgment, pursuant to Rule 56, Super. R. Civ. P. See W. Mass.Blasting Corp. v. Metro Prop. Cas. Ins. Co., 783 A.2d 398, 401
(R.I. 2001).
Prior to the commencement of the instant action, the State of Rhode Island had determined that the subject property, located at 242 Allens Avenue in Providence (the "Property" or "Site") and owned by the State through the Department of Environmental Management ("DEM") as a result of a previous condemnation action, was no longer needed for the purpose for which it had been condemned. Thereafter, in 2004, the State, through the Department of Administration's Division of Purchasing, issued a Request for Proposals for the sale and subsequent use of the Site. Tidewater, an entity formed by the lessee of the Property, Promet Marine Service Corporation ("Promet"), emerged as the successful bidder.
Pursuant to G.L. 1956 § 37-7-3, the City in which condemned property is situated, enjoys the second right, after the acquiring authority, to purchase or lease the property when it is offered for sale following a determination that it is no longer needed for the use it was taken. That section provides:
 "In the event the prior right to purchase or lease the land or real property shall be waived by the person or persons in whom the title to the land or property or interest therein was vested, the city or town wherein the land or property is situated shall have the second right to purchase or lease the land and property upon the same terms and conditions as the acquiring authority was willing to sell or lease the land or property to the vested person or persons thereof. A second right to purchase or lease the land or property shall be conclusively presumed to have been waived in the event a written offer to sell or lease the same, containing the terms of the offer, shall have been sent by registered or certified mail to the city or town clerk, as the case may be, wherein the land and property are situated and the offer shall not have been accepted within thirty (30) days from the date of the mailing."
In a February 9, 2004 letter, the State Properties Committee ("SPC") notified Thomas Deller, the City's Planning and Development Director, of the State's plans to convey the Property and asked whether Deller's agency had any objection to the proposed transaction, or whether it had any use for the land. About a week later, on February 17, 2004, Deller wrote back: "If the property is sold to the present tenant for continuation of its use for boat repair, the city has no interest. If Promet decides it is not interested in the property, the city is interested."
Following several months of negotiations between the DEM and Tidewater, on May 25, 2005, the parties signed a Purchase and Sale Contract (the "Contract") for the Property. Under the terms of the Contract, Tidewater agreed to purchase the Property (approximately 5.5 acres) for $1,026,780.00. In addition, the Contract set forth a closing date of no later than June 30, 2005, and recited that time was of the essence. Finally, paragraph 21 of the Contract, entitled "Right to Terminate," states:
 "Not withstanding anything contained herein to the contrary, this Contract is conditional upon the City of Providence waiving its right to purchase this property under the same terms and conditions contained herein in accordance with R.I. General Laws Section 37-7-3. Said required notice to City was made by certified mail on May 18, 2005. If the City of Providence chooses to exercise its rights as provided in R.I. General Laws Section 37-7-3, then this contract will terminate and be deemed null and void."
On the day that the Contract was executed, the SPC unanimously approved the DEM's proposed sale of the Property to Tidewater. The minutes of the SPC meeting noted, "There is one matter still open and that is the notice sent to the City of Providence, officially notifying them of the terms and conditions of the contract and the Department is now within the 30 day window that the City has to respond."
On June 4, 2005, Patrick T. Conley wrote to Deller urging the City to exercise its right to purchase the Property. In the correspondence, as an "inducement" for the City to buy the Property, Conley submitted a signed sales agreement in which his business, Rhode Island State Pier Properties, LLC, agreed to purchase the land from the City for $1,000,000.00 more than the contract price agreed to by Tidewater. He also included a $100,000.00 deposit to be allocated towards the purchase price.[1]
Shortly thereafter, on June 14, 2005, the Mayor of Providence, David N. Cicilline, wrote to the DEM, indicating the City's intention to exercise its statutory right to acquire the Property. The Mayor also informed the DEM that the Providence City Council would authorize the acquisition of the Property on June 16, 2005, and that the acquisition would most likely be managed by the PRA.
On July 17, 2005, the Providence City Council concluded that (1) "the Purchase Agreement with Tidewater provides that the Purchase Agreement shall be terminated, null and void if the City exercises its rights to purchase the Property," (2) "the Home Rule Charter, Section 416, contains limiting language which would preclude the City from closing the transaction by June 30, 2005," and (3) "the Providence Redevelopment Authority has no such constraints." Ultimately, the City Council agreed to "authorize the Mayor to advise the State, in writing, of the City's acceptance of the offer to purchase the Property pursuant to R.I. Gen. Laws § 37-7-3, through the Providence Redevelopment [Agency.]" The City was also authorized "to designate the Providence Redevelopment Agency as Agent of the City to acquire the Property directly and to hold, own, and manage such Property for the interest of the City[.]"
On June 28, 2005, the State, through the DEM, proceeded to sell the Site to the PRA as the City's agent and delivered a quitclaim deed that was subsequently recorded in the Providence Land Evidence Records. In response, Tidewater commenced the instant action.
 * * * * *
When considering a motion for summary judgment, the court reviews admissible evidence in the light most favorable to the nonmoving party to determine whether the movant is entitled to judgment as a matter of law. Weaver v. Am. Power ConversionCorp., 863 A.2d 193, 197 (R.I. 2005). "[A] party who opposes a motion for summary judgment carries the burden of proving by competent evidence the existence of a disputed material issue of fact and cannot rest on allegations or denials in the pleadings or on conclusions or legal opinions." Weaver, 863 A.2d at 197
(quoting Accent Store Design, Inc., 674 A.2d 1223, 1225 (R.I. 1996)). "The purpose of the summary judgment procedure is to identify disputed issues of fact necessitating trial, not to resolve such issues." Id. (quoting Rotelli v. Catanzaro,686 A.2d 91, 93 (R.I. 1996)).
Tidewater claims that Deller's response to the SPC, disavowing interest in the property if it were to be sold to the present tenant for its continued use for boat repair, effectively constituted a waiver by the City of its § 37-7-3 rights, and that such a waiver was subsequently ratified by the City through a series of acts and/or failures to act. That claim, however, presupposes that Deller actually enjoyed the authority to make the assertion upon which Tidewater relies. Absent such authority, his response cannot serve as a waiver of the City's rights under § 37-7-3. See Potter v. Crawford, 797 A.2d 489, 493 (R.I. 2002) (quoting Romano v. Ret. Bd. of the Employees' RetirementSystem of Rhode Island, 767 A.2d 35, 43 (R.I. 2001)) ("[a] person's failure to discover the true scope of a government agent's actual authority will not provide any grounds to relieve that person's detrimental reliance upon the agent's representations or actions"). Here, there is no evidence, either in the Home Rule Charter or in the City of Providence Ordinances, or in any other source cited to this Court that Deller, as the Director of the Department, was delegated discretionary authority to decide whether or not the City should exercise its § 37-7-3
right to purchase property.
Furthermore, any suggestion that Deller had the implied authority to waive that statutory right also fails. In DancliffRealty Corp. v. Miller, 101 R.I. 478, 225 A.2d 52 (1966), the Court held that the powers of a municipal corporation "are either those expressed, implied or necessary to the accomplishment of the declared objects and purposes as set forth in [the relevant chapter]." Id. at 484, 56. In addition, the Court stated that "any doubt as to the existence of these powers must be resolved against them." Id.
The Department of Planning and Development[2] does have power under Section 2-161 of the Code of Ordinances for the City of Providence "over all matters relative to all those changes which singly or collectively lead to improvement in: (a) The type, distribution, intensity and treatment of land and building use[.]" Section 2-166 of the Code authorizes the Department of Planning and Development to "enter into agreements, covenants and contracts with the . . . State of Rhode Island and Providence Plantations . . . or any other public or private corporation, firm or individual for purposes of carrying out the provisions of this article[.]" Notwithstanding that authority, there is nothing that indicates that the Department, much less its Director by discretionary fiat, is somehow empowered to waive the City's §37-7-3 right to purchase property. Accordingly, as a matter of law, Deller's letter cannot constitute an express waiver issued by the City.
Any contention by Tidewater that the City impliedly waived its statutory right to purchase the property must also fail. An "implied waiver of a legal right must be proved by a clear, unequivocal, and decisive act of the party who is alleged to have committed waiver." Sturbridge Home Builders, Inc. v. DowningSeaport, Inc., No. 2004-351-A., slip op. at 9 (R.I., filed Dec. 29, 2005) (quoting Ryder v. Bank of Hickory Hills,585 N.E.2d 46, 49 (Ill. 1991)). The Rhode Island Supreme Court has recognized that "[o]n summary judgment, the party asserting waiver of a contract term has the affirmative duty to produce evidence demonstrating the existence of an issue of fact concerning the voluntary relinquishment of a known right." Id.
"A waiver may be proved indirectly by facts and circumstances from which the intention to waive may be clearly inferred."Id. (emphasis added) (quoting 28 Am. Jur. 2d Estoppel andWaiver § 225 (2000)). In other words, "the evidence supporting an inference of waiver must be clear." 1800 Smith St. Assocs.,LP v. Gencarelli, No. 2004-286-A., slip op. at 14, 15 n. 4 (R.I., filed Dec. 22, 2005) (citations omitted). Ultimately, "[t]he party claiming a waiver has the burden of proof of the facts on which the party relies to establish such a waiver, and unless such proof is forthcoming the party cannot sustain the claim." Id. (quoting 28 Am. Jur. 2d at § 225 (2000)).
Apart from its unavailing assertion that Deller's letter constituted a waiver, Tidewater also claims that other action or inaction by the City amounted to a waiver. As examples, Tidewater notes that the City did not offer a bid on the Property, nor did it respond to the DEM's newspaper notice that it intended to designate the property as surplus. Tidewater also notes that the City filed no objection when the DEM made its request for approval and signatures on the conveyance of the Property to the plaintiff.
None of these constitute a clear, unequivocal, and decisive act that is a requisite antecessor to find an implied waiver. More importantly, the City had no obligation, duty, or responsibility to undertake any of the acts that Tidewater targets, because at bottom and irrespective of what Tidewater and the DEM had agreed upon, the City held and, indeed, ultimately played its statutory trump card under § 37-7-3, allowing it to assert its interest in the property. Further, the plaintiff and the DEM recognized the existence of that right, clearly identifying it within the contract.
The plaintiff also argues that summary judgment should not be granted because questions of fact exist regarding whether the City employed permissible measures to accomplish the real estate transaction prior to the June 30, 2005 closing date. Tidewater maintains that the City's tortious interference is demonstrated by unjustifiably authorizing the PRA to purchase the Property when, pursuant to the land acquisition procedures set forth in the Home Rule Charter, the City knew it would not be able to complete the transaction in a timely fashion. The plaintiff asserts that the PRA is a separate entity from the City and, therefore, could not exercise a statutory right exclusively conferred upon the City. Finally, Tidewater argues that the City's statutory right is non-delegable and that the PRA exceeded its authority in purchasing the Property as an agent of the City.[3]
A party may be held liable for intentional interference with a contract if its actions amounted to "legal malice," that is to say, an intent to do harm without justification. UST Corp. v.General Road Trucking Corp., 783 A.2d 931, 937 (R.I. 2001) (citing Jolicoeur Furniture Co. v. Baldelli, 653 A.2d 740,753 (R.I. 1995)). "The mere fact that a person asserts a claim to the property that is unfounded does not warrant a presumption of malice, but a plaintiff `must also show that the defendant could not honestly have believed in the existence of the right he claimed, or at least that he had no reasonable or probable cause of believing so.'" Arnold Rd. Realty Assocs., LLC v. Tiogue FireDist., 873 A.2d 119, 126 (R.I. 2005) (citing Peckham v.Hirschfeld, 570 A.2d 663, 667 (R.I. 1990) (quoting Hopkins v.Drowne, 21 R.I. 20, 25, 41 A. 567, 569 (1898))). In BelliveauBldg. Corp. v. O'Coin, 763 A.2d 622, 629 (R.I. 2000), the Supreme Court noted that a rival claimant's good faith assertion of a colorable property interest constituted a defense to an allegation of tortuous interference with contract:
 "One who, by asserting in good faith a legally protected interest of his own or threatening in good faith to protect the interest by appropriate means, intentionally causes a third person not to perform an existing contract or enter into a prospective contractual relation with another does not interfere improperly with the other's relation if the actor believes that his interest may otherwise be impaired or destroyed by the performance of the contract or transaction." Id. at 629 (quoting Restatement (Second) Torts § 773, at 52 (1979)).
Given that the City, as a matter of law, never waived its right to purchase the Property, and that its sale to Tidewater would have clearly impaired the City's interest in the land, it is plain that the City asserted a bona fide claim when it exercised its § 37-7-3 rights. The fact that the City Council acknowledged its need to use the PRA to purchase the Property by the stated closing date is of no relevance to the question of whether the City acted in good faith.
Tidewater's conclusory allegations of bad faith on the part of the City are, without more are simply insufficient to withstand an entry to summary judgment. See Axxess, Inc. v. Rhode IslandHosp. Trust Nat'l Bank, 1991 U.S. Dist. LEXIS 10638, *12 (D. Mass. 1991) (summary judgment granted where there was no evidence that defendant did not act in good faith).
 * * * * *
For all of the foregoing reasons, the defendant's motion for summary judgment is granted. Counsel shall submit an appropriate order consistent therewith.
[1] The check was never cashed and was ultimately returned to Conley in September because, according to him, the City had decided to keep the Property.
[2] Although there is no record of the Department of Planning and Urban Development changing its name to the "Department of Planning and Development" in either the Code of Ordinances, the Public Laws or the Home Rule Charter, according to the City's website, at http://www.providenceri.com/government/planning/planning-index.html, "The Department of Planning Development was created in 1985 by merging the Department of Planning and Urban Development, the Mayor's Office of Community Development and the Mayor's Office of Economic Development."
[3] Tidewater also suggests that the City's interference with the Contract was unjustified because its involvement in the transaction was allegedly provoked by what Tidewater perceives as Conley's personal motives to avenge Tidewater's opposition to his petition to obtain a liquor license for his neighboring property. This argument is unavailing, as "the validity of an ordinance [or resolution] is not affected by the motives of persons who press . . . [to] procure its passage." 56 Am. Jur. 2d MunicipalCorporations § 349 (2000).